EDWIN WALKER

*v.*

CHARLES G. CARLETON *et al.*

*Filed at Ottawa February 3, 1881—Rehearing denied March Term, 1881.*

1. CONTRACT—*proposed loan, and trust deed—loan actually made, being of different character, not embraced in the security.* A party, under promise of a loan of $5000, gave a note for that amount, payable in six months, secured by a

deed of trust on real estate, and a warrant of attorney was given to confess judgment on maturity, which deed of trust was recorded by the trustee, but on the day following, when the maker applied for the money, the lender and payee of the note informed him that he could only advance $3000, which was accepted, and a note given therefor, payable in 30 days, for $3060, signed by the same security as in the first, to which was also attached a power to confess judgment if not paid at maturity, and there was no reference made in the smaller note, or power of attorney, to the previous note and trust deed, or by any other written instrument: *Held,* that the money so loaned was not on the security of the first note and trust deed, but was a new and independent transaction, and that, therefore, no sale could legally be made under the trust deed for any default in the payment of the last note, and a sale under it is a nullity.

2. COLLATERAL SECURITY—*note without consideration.* Where a note is delivered as collateral security, it is upon the supposition that something is due or, at least owing upon it, and it may be collected or sold to raise the money due for which it is pledged. If nothing be due or owing, and it is only in the nature of accommodation paper, it may be negotiated, and the money paid for which it was intended as security.

3. Where a borrower of money gives his own note for a larger sum than the loan, secured by deed of trust, as collateral security for the note given for the sum loaned, both payable to the same payee, the first note being without consideration, the payee will only have power to sell and transfer the larger note and trust deed to raise the money to pay the smaller one. Until sold and indorsed, such larger note is not operative and binding, and no sale can be made under the trust deed securing it.

4. TRUST DEED—*power of sale can only be exercised for the debt secured.* Where a deed of trust is given to secure a loan of $5000 expected to be made, and a note for that sum is executed and delivered, and the negotiation falls through, and a loan is then effected for $3000 only, for which a note is given, the parties can not, by a parol agreement, authorize the trustee in the trust deed to sell for default in the payment of the second note. Such an agreement would be within the Statute of Frauds.

5. SAME—*sale when nothing is due—estoppel.* Where a trustee, under a trust deed given to secure a note without any consideration, had advertised the premises for sale, the fact that the grantor may have indirectly recognized the power to sell, by asking and obtaining a postponement of the sale, will not estop him from afterwards insisting there was no power to sell.

6. LACHES—*eight months' delay no bar.* A delay of only about eight months in bringing suit to set aside a sale under a deed of trust is not unreasonable, and will not bar the suit.

APPEAL from the Appellate Court for the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and the Hon. GEORGE W. PLEASANTS and Hon. JOSEPH M. BAILEY, Justices;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Mr. ELLIS S. CHESBROUGH, Jr., for the appellant.

Messrs. SLEEPER & WHITON, for the appellees.

Mr. GEORGE BASS, for the appellee Dennison.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In the month of May, 1876, appellant negotiated with appellee for a loan of $5000, to be secured by note and trust deed on the premises in controversy. Appellee agreed to loan appellant that sum in case the title to the premises proved, on examination, to be satisfactory. At appellee's suggestion, appellant went to the attorney of appellee, who drew the note for $5000 and trust deed, and a warrant of attorney to confess judgment in case the money was not paid at maturity. The note was described in the trust deed and warrant of attorney. As required, appellant procured William Dennison, who held the legal title in trust for him, to execute the deed of trust and to sign the note and warrant of attorney. The note was at six months, and drew twenty per cent after maturity. These papers were executed on the 15th day of May, 1876. On the 17th of the month, the attorney of appellee had the trust deed recorded.

It appears, that on the next day, appellant called on appellee for the money, but did not obtain the $5000. But appellee then loaned him $3000, and took his note therefor in the sum of $3060, due in thirty days, with twenty per cent interest after maturity, also a power of attorney to confess a judgment on the note, if not paid at maturity. The note and warrant of attorney were also signed by Dennison. Neither the note

nor warrant of attorney. in any manner referred to or mentioned the $5000 note, the power of attorney to confess a judgment on it, or the deed of trust executed to secure its payment. This latter note was not paid at maturity, nor was payment demanded until five months thereafter, but at and before the end of that time appellant paid thereon $600, which was indorsed on the note.

On the 31st of January, 1877, the trustee named in the deed of trust given to secure the $5000 note, and who was in possession under a prior deed of trust on the premises, sold them under a notice given according to the terms of the trust deed to secure the $5000 note. The notice stated that appellee held that note as collateral security for the payment of the note for $3060, claiming that this latter sum was due on it. Carleton held both notes. At the sale he became the purchaser and received a deed from the trustee. He bid the sum of $2625, and became the purchaser at that price. He indorsed that sum as a credit on the $5000 note. Nor does it appear that he ever offered to surrender these notes and warrants of attorney to appellant or Dennison.

It also appears that appellee subsequently conveyed this property to his mother. But it is admitted that she received the conveyance fully charged with appellant's equities, if he has any, and that she holds no better title than was held by her grantor.

Appellant filed this bill to set aside these sales and to be let in to redeem the premises. Answers were filed and replications thereto, and proofs were made and heard, and the court dismissed the bill. The case was thereupon removed to the Appellate Court, and the decree of the lower court was affirmed. Complainant brings the case to this court and assigns error.

It is insisted, in favor of reversal, that the loan of $3000 was at a different time, was for a different amount, the note running for a different period, and was in fact and in form wholly a different transaction from the $5000 loan; that. the.

deed of trust to secure the latter named loan was not referred to in either of the written instruments executed when the money was paid to appellant; that there is no evidence in the record sufficient to prove any, the slightest connection between the two transactions; that they were entirely distinct from each other; and it appears that the trustee understood that the transactions were not the same, as he described the $3060 note as the debt, and the $5000 note and deed of trust as being held as collateral security for its payment. He did not understand that the money was loaned on the $5000 note, but on the $3060 note; nor did appellee correct this understanding.

If the loan was made on the larger note, why take the smaller? There was no advantage obtained by giving the transaction that form. It added nothing to the security, nor did it increase the certainty of a more speedy payment. The first note given had the same makers as appeared on the latter. If the loan was under the first note, why take the latter or change the time of payment? Why not advance the money, and credit that note with $2000? If the first note and agreement were intended to control, such would have been the plain, simple and usual course in business, or the note, power of attorney, or some other written instrument would have referred to and stated that both were a part of the same transaction.

Again, when the $600 was paid it was indorsed on the smaller note. Appellee must then have believed the smaller note represented the debt, and not the larger one.

On more mature consideration, we must conclude that the money was, for some reason, loaned and advanced under the $3060 note, and that it evidenced the indebtedness, and that it formed a separate and distinct transaction from the $5000 note and deed of trust.

It is claimed, however, that both notes and warrants of attorney were delivered at the same time, and as a part of the same transaction, and therefore the three thousand dollars

then advanced to appellant was obtained under the $5000 note, and formed a part of the consideration for which it was given. This, we think, is clearly a misconception. There is no pretense that more than $3000 was ever advanced; and when appellant came to get the $5000 he was informed by appellee that he could only let him have $3000. He then made the loan and took the smaller note, with Dennison as surety. What must we infer from the transaction? Not that the money was advanced under the $5000 note, because no one says that such was the fact, and because the taking of the $3060 note repels such a presumption. If the money had been advanced under the first note why not have done so, and credited it with $2000? This was the straightforward, simple course, it appears to us, any business man of ordinary intelligence would have adopted. But it is suggested that the smaller note was taken to avoid the expense of drawing new papers and recording another deed of trust. This could not have been the reason, as persons of the intelligence of the parties engaged in this transaction surely knew that could all have been avoided by simply crediting the $5000 note, described in the deed of trust, with the amount not advanced. Such would have been the course which would have naturally suggested itself to any fair, ordinary business man, desiring to hold the note and trust deed as security for the money loaned.

We are clearly of opinion, that the money was not advanced, or intended to be advanced, on the $5000 note, but was advanced under the $3060 note, and that the larger note was given without any consideration whatever.

But it is said that the first note and deed of trust were delivered as collateral security. If this were conceded to be true, then what follows? When such notes are delivered as collateral security, it is upon the supposition that something is due, or, at least, owing, upon them, and they may be collected or sold to raise the money due, for which they are delivered as security; or may, if nothing be due or owing,

and are only in the nature of accommodation paper, be negotiated and the money paid for which they were intended as a security. If, then, this larger note and the deed of trust were delivered as collateral security for the payment of the smaller note, according to the course of business, appellee only had the power to sell and transfer the instruments to raise the money to pay the smaller note. This was the extent of his power; but it would be otherwise with notes of other persons thus pledged. Had appellee sued on the larger note he could not have recovered, because it was given without consideration. Nothing was due under it, as between the makers and appellee. Had it been sold as a collateral security and indorsed to the purchaser, then it would, for the first time, have become operative as a valid instrument. But appellee had advanced nothing on it, paid nothing for it, and the makers owed nothing on it, and appellee had no right, either at law or in equity, to enforce its payment; and, if so, in what manner could a useless and worthless note be collateral security? We are at a loss to perceive.

If it be said that both notes were held as evidence of the indebtedness, it may be answered, that it would be unprecedented that a creditor may hold two notes, of different amounts, different dates, and payable at different times, for the same debt. It is generally supposed a note is evidence of the amount it specifies to be due, and not a different amount, and so of the time of payment and the person to whom payable.

If nothing is due on an instrument to secure which a trust deed is given, in such a case there is an absolute want of power to sell the trust property. When there is no debt there is an absolute want of power, and a sale thus made is a nullity. Here, there was no debt due, and never had been, under or by the note described in the deed of trust,—hence, there was no power to sell the trust property. That note never became effective or binding on the makers; hence, no power ever existed in the trustee to make the sale, and, for

that reason, he passed no title and was wholly unable to pass any to appellee. Having acquired no title, he can not set up the sale by the trustee to defeat the relief sought by appellant. But, he having offered to pay the money loaned, with interest, to have that title and the conveyance to the mother of appellee set aside, he must be permitted to do so, on the terms he has offered.

It is, however, urged, that when both notes and the other papers were delivered, it was agreed that they should be held as security for the money actually loaned. The deed of trust had been filed for record on the day previous to the loan, and consequently it was not delivered to secure the $3060 note, but, if delivered at all, it was to secure the $5000 note, on which nothing was ever due or owing. Noyes says he was, at the time, asked whether the first note and deed of trust, with the other papers, could be held as security for the payment of the money, and he informed the parties they could. This is far short of saying the land could be sold under the deed of trust, for its payment. Nor does appellee testify that there was any such agreement. He says, that he loaned the money on the land, but this is, manifestly, only his inference. He does not say that there was any such agreement, even if the deed of trust could have been rendered operative thereby, to empower the trustee to sell the premises.

Had the money been loaned on the first note, and it had been paid, the parties could not have, by parol, authorized the trustee to sell under the deed of trust, for the payment of another debt not described in the trust deed. Power to sell real estate, all know, can only be conferred in writing, under the Statute of Frauds. The proposition to loan the $5000 having failed and come to an end, the power to sell for its payment fell through and came to an end with the abandonment of that negotiation. The parties could not substitute the new agreement for the first by parol, and thus transfer the power to sell to pay the first note, to the second. To have produced that effect the agreement should have been

in writing. The new agreement could not be substituted for the first in any other manner.

Sales under such trusts must be in conformity to, and strictly pursue the power. Such was not the case here. The power was to sell to pay the larger, and not the smaller, note. Nothing was, or ever had been, due on the former note, and there was, consequently, no power to sell. Where there is nothing due there can be no power, when the deed of trust is given to secure the payment of money. This sale was, therefore, as between the parties, void, and appellee acquired no title by his purchase. He, being the creditor, as well as purchaser, took with notice that there was nothing due on the note for the payment of which this sale was made; hence no question of innocent purchasers without notice can arise in the case.

Nor does the fact that appellant may have, subsequently, indirectly recognized the power to sell, by asking and obtaining a postponement of the sale, as it was only verbal, estop him from insisting there was no power to sell. He could not have thus estopped himself had the trustee advertised to sell for the payment of any other debt appellant might have owed appellee; and, this being the true character of the advertisement in this case, there was no estoppel. Nor did the delay, after the sale, before instituting proceedings to redeem, have that effect. The delay was reasonable, and appellant can not be held to have lost any of his rights thereby. The delay was only about eight months. No case, we think, can be found which holds that a suit is barred by such delay, under similar circumstances. But even if the first note and deed of trust were held as legal and operative collaterals, Carleton only acquired the same right, and no more than he before had, when he purchased at the trustee's sale. That did not operate to foreclose Walker's equity of redemption, whatever the effect had a stranger purchased.

The decree of the Appellate Court is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

CRAIG, SCOTT and SHELDON, J.J., dissenting: Equity regards substance, not form. The substance of the transaction was that there was but $3000 furnished, instead of $5000, and the former was accepted in lieu of the latter, and the trust deed, to the extent of $3000, was valid and enforceable.

Subsequently, on an application for a rehearing, the following additional opinion was filed:

Mr. CHIEF JUSTICE DICKEY:

I concur in the order made denying a rehearing in this cause, as sought by Carleton *et al.*, appellees, and I concur in the conclusion reached in the opinion delivered by my brother WALKER; but I do not concur in all the views and reasoning found in that opinion. My view of the matter is this: Assume even that appellees are right in their ·contention, that the execution and delivery of the $5000 note and the trust deed made to secure the same, constituted a part of the same transaction with the loan of money for which the $3000 note was given, it follows, under the circumstances, that the real debt was a temporary loan, evidenced by the $3000 note, and the deed of trust, with the $5000 note, did not constitute the debt or the evidence of the debt, nor a *direct security* for the debt, but, at most, was merely handed over, or deposited, by Walker as *collateral security* upon the debt evidenced by the $3000 note. Walker had the right to take up these collaterals at any time by paying the temporary loan. There was no power given to the lender to sell these collaterals. He had the right, when the same fell due, to collect the same for Walker,—to convert thus the collateral into money, and apply the proceeds to the payment of the loan, and pay the surplus to Walker. He attempted to collect by selling

under the power in the trust deed, declaring, in his notice, that this was *a collateral* security. He failed to convert the same into money. He did transfer the title from High, the trustee, to Carleton, the creditor, and did cut off Dennison's right of redemption as a mortgagor; but, having thus acquired the legal title, Carleton held the same, in pledge, as collateral security for the $3060, in the same condition as though the deed of trust made to High had originally been an absolute deed to Carleton, and delivered, *as a mortgage,* to secure the $3060 note.

Had the $5000 note been the note of a stranger, payable to Walker, and secured by a like deed of trust by Dennison to High, and had such $5000 note been assigned and delivered, with the deed of trust, to Carleton, as collateral security upon the $3060 note, and had Carleton procured a sale by High, and a trustee's deed from High to himself, it would not be doubted that Walker could redeem from Carleton.

Had a stranger been a purchaser at the trustee's sale in the case at bar, or in the case supposed, a very different question would arise.

I think that Carleton now holds the title to the land in question, in security for the $3060 note, subject to redemption by Walker, as debtor; and it will be subject to redemption until such equity of redemption is regularly foreclosed by decree, or sale under a decree of court, or until otherwise lawfully extinguished; and, therefore, the court below should make a decree permitting Walker to redeem upon just terms.