DAVID GLASSMAN & another *vs.* HARRY FICKSMAN.

Suffolk. March 17, 1921. — May 28, 1921.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Contract,* Performance and breach. *Mortgage,* Of personal property: consideration, foreclosure. *Evidence,* Extrinsic affecting writing, To show consideration not mentioned in instrument or writing.

A dairyman gave a personal property mortgage to one who agreed in writing to advance later a part of the money which was included in the mortgage note for the purchase of additional cows. Later this mortgage, which had not been recorded, was discharged and a new one for a less amount given, the new note including a sum which the mortgagee agreed in writing to advance later for the purpose of purchasing cows. The second mortgage was discharged and a third mortgage was given to secure a note which was payable in monthly instalments on the twentieth day of each month, the mortgage providing that the mortgagor might retain possession of the mortgaged property and use and enjoy it until default. After the payment of several monthly instalments and when no payment was due, the mortgagee on the seventh day of the month took possession of the property and on the third day of the next month sold it. The mortgagor brought against the mortgagee an action of contract or tort with a declaration in eight counts, in each of three of which he alleged the giving of one of the mortgages above described in consideration of an agreement by the mortgagee that he would advance further sums, which the mortgagee had refused to do; and in the other counts he alleged that the defendant entered and took possession of the property when there was no default under the mortgage. An auditor found that the plaintiff frequently had requested of the defendant the advance of the further sums, but that he had made no such request after the giving of the last mortgage, that, when the last mortgage was given, the parties had an accounting together and that the amount due was agreed upon. At the trial the report of the auditor was in evidence and there was testimony tending to show that the amount of the last mortgage note was not due to the defendant when that mortgage was given, that the defendant orally had agreed to advance a part of it later and that he had broken that agreement. There also was evidence that when the mortgage was foreclosed nothing was due to the defendant, that the amount of money paid to the defendant and the value of property returned to him in transactions between the parties exceeded "the amount due the defendant on the entire transaction," and that the plaintiff had suffered loss by the defendant's breach of the agreements. The judge ordered a general verdict for the defendant. *Held,* that

(1) The question, whether the amount of the third mortgage was fixed by an accounting between the parties, was for the jury, the finding by the auditor not being conclusive;

(2) The question, whether the plaintiff in giving the third mortgage had relinquished his right to recover for breaches by the defendant of his agreements

which accompanied the transactions as to the preceding mortgages, to make further advances of money, was for the jury;

(3) The counts of the declaration which were based on allegations as to breaches by the defendant of the agreements to make advances of money after the giving of the mortgages should have been submitted to the jury;

(4) The plaintiff was entitled to show by parol evidence that the consideration for the last mortgage was not alone the promissory note for the sum therein mentioned but was also to secure the future advances of money to the plaintiff;

(5) There was evidence tending to show that the entry and foreclosure by the defendant were without right, and the plaintiff was entitled in an action of tort to recover the resulting damages.

CONTRACT or TORT, by David Glassman and Barney Glassman, copartners doing business under the firm name and style of D. Glassman and Company, with a declaration as amended in eight counts, hereinafter described. Writ dated March 28, 1916.

In the first count of the declaration as amended, the plaintiffs alleged in substance that on or about October 1, 1915, " they made and entered into a written mortgage contract with the defendant in the sum of $5,000 covering live stock, horses, wagons, milk route and other property, . . . and at the execution and delivery of said mortgage, the defendant agreed to provide the plaintiffs from time to time upon demand with such sum or sums as they would require to properly stock their dairy farm, and to maintain and prosecute the business of the delivery of milk; said amount under any circumstances, however, not to exceed the amount of $5,000;" that relying upon such contract the plaintiffs made and executed the mortgage; that the defendant " neglected and refused, and still neglects and refuses to carry out the agreements hereinbefore set forth " and that, in consequence of his failure so to do, the plaintiffs were unable to continue the dairy farm and to prosecute and maintain their business, and had suffered thereby great loss and damage.

In the second count the plaintiffs alleged that on or about December 9, 1915, " they made and executed to the said defendant a mortgage in the sum of $3,900 upon the defendant's agreement that the said defendant would, from time to time, advance to the plaintiffs the aforesaid sum as demanded, with which to increase the business they were then engaged in and to carry on and maintain the same," and that the defendant refused and neglected to perform his agreement.

The allegations of the third count were that on or about Decem-

ber 9, 1915, the plaintiffs "made and executed to the said defendant a mortgage in the sum of $3,305 upon the defendant's agreement that the said defendant would, from time to time, advance to the plaintiffs the aforesaid sum as demanded, with which to increase the business they were then engaged in and to carry on and maintain the same. That said plaintiffs demanded of said defendant the aforesaid sum at times when the same was necessary and that the defendant, despite his agreement, refused and neglected and still neglects and refuses to perform his said agreement, and furnish said money all to the plaintiffs' great damage."

In the fourth count the plaintiffs recited that the three mortgages above described were given by the plaintiffs pursuant to the agreement of the defendant "to advance them money from time to time as required," and that "the plaintiffs have often requested the defendant to advance the money as agreed to at the time when said mortgages were executed and delivered but that the defendant has refused and neglected, and still refuses and neglects so to do, but has, in violation of his contract with the said plaintiffs, and before default in either, made entry upon all the property described in the respective mortgages, foreclosed, advertised and sold the same and has devoted the proceeds thereof to his own use, and has in all other respects violated the terms, agreements and conditions upon which the plaintiffs executed and delivered to said defendant the aforesaid mortgages. In consequence of the acts, doings and omissions of the said defendant the said plaintiffs have been deprived of their business, property, good will and all things in any way pertaining thereto; that they have been deprived of the income therefrom and the benefit and advantages accruing thereunder, all to their great damage."

In the fifth count the plaintiffs alleged a breach of the agreement to supply money to them, without any allegation as to the foreclosure of the mortgage.

The sixth count was demurred to, *ore tenus*, and the demurrer sustained by *Wait*, J.

In the seventh count the plaintiffs alleged "that after the execution and delivery of the mortgage for $3,305 . . . the defendant neglected, refused and always neglected and refused to make payments to the plaintiffs under the terms, agreements and conditions thereof. That the plaintiffs at all times were ready,

willing and did perform each and every covenant and agreement on their part to be kept and performed, and did pay to the defendant the instalments upon the principal of said mortgage and interest thereon, as therein required. The plaintiffs further allege that sometime in March, 1918, while there existed no default therein that the defendant instituted proceedings of foreclosure and did sell the personal property therein described, depriving the plaintiffs of their enjoyment in the use and possession thereof. That by reason of the said sale under the said foreclosure upon the defendant's claim of right, the aforesaid property was sacrificed and the plaintiffs deprived of the possession theretofore conducted by them of which said property was an essential part. That by reason of said defendant's illegal act, the plaintiffs have suffered great damage."

In the eighth count the plaintiffs alleged " that in their dealings and relations with the defendant as hereinbefore expressed in the other counts, the plaintiffs declare that they have paid to the defendant large sums of money in excess of the amount advanced by the said defendant on account of said various respective mortgages, and that at the time of the alleged foreclosure, taking possession of and the depriving of the plaintiffs of the use thereof, the defendant was indebted to the plaintiffs in a large sum to wit the sum of $800."

All counts were alleged to be " for one and the same cause of action."

The action was tried before *Morton*, J. Material evidence, introduced and offered by the plaintiffs, is described in the opinion. By order of the judge, the jury found for the defendant; and the plaintiffs alleged exceptions.

*S. A. Dearborn*, for the plaintiffs.

*R. W. Frost*, for the defendant.

CARROLL, J. A mortgage of personal property in the sum of $1,485 was executed and delivered to the defendant by the plaintiff David Glassman and his partner Walker. This mortgage was subsequently satisfied and discharged. After Walker had sold his interest in the property Barney Glassman became a partner of his brother David. On or about October 15, 1915, the plaintiffs gave the defendant a personal property mortgage for $5,000 — the defendant agreeing in writing to advance $2,500 — with which

to buy "the additional cows included in the $5,000 mortgage." This mortgage, the auditor finds, was never recorded and was extinguished and a new mortgage substituted in its place for $3,900, which was not the amount which had been advanced, but included $1,100 which was to be advanced to the plaintiffs for the purpose of purchasing seventeen cows. This last mentioned mortgage was executed on or about October 20, 1915, when a written agreement was made providing in substance that the defendant would pay the plaintiffs the sum of $1,100 for the purchase of the additional cows.

On December 9, 1915, the mortgage for $3,900 was discharged and a mortgage for $3,305 was executed covering thirty-two cows, horses, wagons and other personal property, to secure, according to its terms, a promissory note of the same date of $3,305, payable in monthly instalments of $50 each, the first payment to be due December 20, 1915, with interest monthly.

The auditor found that the plaintiffs frequently requested the defendant to pay them under the terms of the written agreements but that the defendant refused to advance the money as therein provided. But that there was no such request or failure after the execution of the mortgage of December 9, 1915; that payments were duly made to February 20, 1916, by the plaintiffs, and on March 17, 1916, the defendant took possession of the property and on April 3, 1916, sold it at public auction in accordance with the notice of the foreclosure sale for $1,701.80.

The auditor also found that while the defendant did not comply with the terms of the agreements entered into when mortgages for $5,000 and $3,900 were executed, he made no finding of damage and found that when the mortgage for $3,305 was executed the parties had an accounting and the amount due was agreed upon.

At the trial the auditor's report was in evidence and the plaintiff Barney Glassman and the defendant testified. There was evidence from which the jury could find that the defendant did not comply with the terms of the written agreements entered into when the mortgages for $5,000 and $3,900 were executed, and failed to advance the money as agreed. There was also some evidence that the plaintiffs did not owe the sum of $3,305 when this last mortgage was given and that the defendant "was supposed to give me [the plaintiffs] $700 or $800 to make up the $3,305; "

that the defendant 'promised "in about two or three weeks he would give him [the plaintiffs] the money, to get new cows in exchange for the old ones" and did not pay the money as agreed. The plaintiffs also offered to prove that when the defendant refused to pay them money for the purchase of cows as stipulated in the agreement for which the $3,900 mortgage was given, the defendant delivered to them certain cows and horses which they could not use, which the defendant agreed they might return if "they were not all right" and that the money paid to the defendant and the value of the property returned to him exceed "the amount due the defendant on the entire transaction" and offered to show that they had suffered damages and loss by the defendant's breach of the agreements.

The action was in contract or tort, and at the conclusion of the evidence a verdict was ordered for the defendant.

Although the auditor found that there was an accounting between the parties when the $3,305 mortgage dated December 9, 1915, was given, the jury could have found on all the evidence that there was no such accounting. It was not claimed that there was any account taken in writing, and it was for the jury to determine whether the parties then agreed on the sum due the defendant. Neither could it be ruled that the plaintiffs waived the defendant's failure to perform the agreements accompanying the mortgages for $5,000 and $3,900. The relinquishment by the plaintiffs of their right to recover for whatever damages they suffered by reason of the defendant's failure to live up to the agreement was a question of fact. See *Boyden* v. *Hill*, 198 Mass. 477, 486; *McGrath* v. *Quinn*, 218 Mass. 27; *Title Guaranty & Surety Co.* v. *Fred T. Ley & Co. Inc. ante*, 113.

If the defendant failed to carry out the agreement which formed the consideration of the $5,000 mortgage and this breach was not waived by the acts of the parties and the plaintiffs were damaged in consequence, they could recover under the first count of the declaration. See *Turpie* v. *Lowe*, 114 Ind. 37, 54. And if the contract secured by the $3,900 mortgage, whereby the defendant was to advance money to the plaintiffs for the purpose of purchasing cows, was broken and the plaintiffs suffered loss or damage in consequence, they made out a case for the jury under the second count.

The seventh count of the declaration alleges that after the execution and delivery of the mortgage for ·$3,305, the defendant neglected and refused to make payments to the plaintiffs "under the terms, agreements and conditions thereof;" that the plaintiffs were ready and willing to perform all the conditions and paid the instalments upon the principal of said mortgage and the interest thereon and when no default existed the defendant began foreclosure proceedings and sold the property, depriving the plaintiffs of its possession and use, that the property was sacrificed and the plaintiffs deprived of its possession to their great damage.

The plaintiffs could show by parol that the consideration for the mortgage of $3,305 was not the promissory note for the sum mentioned but was also to secure the future advances of money to the plaintiffs as testified by one plaintiff, *Brouillard* v. *Stimpson,* 201 Mass. 236, *Saunders* v. *Dunn,* 175 Mass. 164, and if there was a breach of this agreement resulting in damage to the plaintiffs, they could recover under proper pleadings.

Under the seventh count we think the plaintiffs do allege with sufficient accuracy the defendant's unlawful act, in taking possession of the property before any breach of the covenants by the plaintiffs, and that there was evidence to support this contention. The promissory note for $3,305 was payable in monthly instalments of $50 each, payable on the twentieth day of each month, with interest payable at the same date at the rate of six per cent per annum. The last payment was made on February 20, 1916; the next payment was due on March 20, 1916. On March 17 the defendant took possession of the property covered by the mortgage, thereafter holding possession of the same until April 3 when the mortgaged property was sold at auction. The plaintiffs offered to show that on March 20 they tendered to the defendant the $50 due and the interest, which the defendant refused to accept and that by reason of defendant's acts the plaintiffs suffered loss and damage.

Under the terms of the mortgage the plaintiffs were to retain possession of the mortgaged property, and to use and enjoy the same until default. When the defendant entered the plaintiffs' premises and took possession of the property the plaintiffs were not in default. They had complied with the provisions of the

mortgage and if the defendant interfered with their business the plaintiffs could maintain an action of tort in the nature of trover for the wrong done. *Rogers* v. *Barnes,* 169 Mass. 179. See *Schayer* v. *Commonwealth Loan Co.* 163 Mass. 322; *McLeod* v. *Jones,* 105 Mass. 403; *Brackett* v. *Bullard,* 12 Met. 308, 310.

The offer of proof showed that on March 20 the plaintiffs made a tender of the amount due on the principal and interest; the defendant had no right in these circumstances to withhold possession from them and sell the goods when there was no default. *Schayer* v. *Commonwealth Loan Co., supra.*

*Exceptions sustained.*