STATE REALTY COMPANY OF BOSTON, INC. *vs.* MACNEIL BROS. COMPANY & another (and a companion case[1]).

Middlesex.     January 6, 1956. — June 8, 1956.

Present: QUA, C.J., RONAN, SPALDING, & COUNIHAN, JJ.

*Mortgage*, Of real estate: foreclosure, redemption, pledged mortgage, what secured, mortgagee in possession. *Equity Jurisdiction*, Redemption from mortgage. *Pledge. Auction. Estoppel. Equity Pleading and Practice*, Appeal, Bill, Counterclaim, Cross bill, Suit to redeem from mortgage.

An appeal from the final decree in a suit in equity must be dismissed for failure of the appellant seasonably to give the order for preparation of the papers required by G. L. (Ter. Ed.) c. 231, § 135, regardless of any such order given by the opposing party to perfect his own appeal from the decree. [297]

Failure of an appellant from the final decree in a suit in equity to give the order for preparation of the papers required by G. L. (Ter. Ed.) c. 231, § 135, within ten days after the case became ripe for preparation and printing of the record when the trial judge finally determined the matter to be printed under Rule 2 (F) of the Rules for the Regulation of Practice before the Full Court (1952) was fatal to the appeal even if, long after the ten day period had expired, a judge of the trial court purportedly extended the time for the filing of a designation by the appellant: the ten day period could not be extended after it had expired. [297]

The bill in a suit in equity for redemption from a real estate mortgage was sufficient where it identified the mortgage on property of the plaintiff and the parties interested in it, and offered to redeem, even

[1] The companion case is that of MacNeil Bros. Company *vs.* State Realty Company of Boston, Inc. The second defendant in the first case is alleged to have attached some of the land to which the cases relate. The bill was taken for confessed against that defendant on November 1, 1954, and nothing further appears as to that defendant.

State Realty Co. of Boston, Inc. *v.* MacNeil Bros. Co.

though it did not set forth the items of the accounting to be had. [298, 303]

It is the purpose of St. 1943, c. 57, as amended, merely to provide a procedure for satisfying the Federal soldiers' and sailors' civil relief act by obtaining a court order authorizing the foreclosure of a mortgage, and not to require a plenary suit to effectuate the foreclosure instead of the customary methods of entry and sale. [298–299]

A suit in equity for redemption from a mortgage did not fail on the alleged ground that under Rule 32 of the Superior Court (1954) the redemption should have been sought by counterclaim in a pending suit by the holder of the mortgage under St. 1943, c. 57, as amended, for authority to foreclose the mortgage and could not be obtained by an independent suit. [298–299]

In a suit in equity for redemption from a real estate mortgage, it was error to eliminate entirely from the suit consideration of a claim of the mortgagor for "waste or damages" arising from possession of the mortgaged premises by the holder of the mortgage and to reserve such matter for determination in some future action; and a decree for redemption reflecting such error must be reversed and, in the circumstances, a new decree entered providing for immediate redemption conditional on the mortgagor's waiving his right to have the matter determined and taken into account in fixing the amount he must pay to redeem, leaving it to be determined later in the same suit, or, if there should not be such a waiver within the time allowed by the decree, for proceeding to a determination of the matter and the entry thereafter of a final decree for redemption taking into account any sum found due him in such determination. [300, 306–307]

The facts pertaining to an advertised auction sale of a pledged real estate mortgage and mortgage note in a back room of the offices of a real estate board on an upper floor of a building in Boston did not show that the sale was invalid. [302]

A real estate mortgage and mortgage note given, to the knowledge and with the understanding of all concerned, "for the special purpose" of securing satisfaction of any judgment obtained in an action commenced against the mortgagee and written for a face amount the same as the ad damnum of the writ in that action as the maximum anticipated amount of the mortgagee's liability therein, and assigned by him in pledge to the plaintiffs in the action pursuant to the understanding and thereafter bought in by them at a sale in enforcement of the pledge and assigned by them to a corporation which was solely their creature, constituted security and were enforceable for, not their face amount, but only a much smaller amount of a judgment later obtained by the plaintiffs in the action against the mortgagee, and such smaller amount actually intended to be secured could be shown in a subsequent suit in equity by the mortgagor against the corporation for redemption from the mortgage; the mortgagor was not estopped in that suit from denying that the note and mortgage were given for a debt of the mortgagor to the mortgagee or from showing the true purpose thereof. [302–304]

In the accounting in a suit in equity for redemption from a real estate mortgage under which its holder had taken possession of and managed the mortgaged premises, the holder should have been allowed the fair value of legal services incurred in establishing and maintaining his possession by bringing certain proceedings and by defending others "brought . . . to embarrass, restrain and enjoin" him, and the amount of the premium for liability insurance "reasonable for . . . [his] protection" in view of a "deplorable" condition of the premises. [304–305]

Two BILLS IN EQUITY, filed in the Superior Court on August 10, 1954, and September 3, 1954.

In the second suit, a demurrer and a plea by the defendant were overruled by an interlocutory decree entered by *Forte*, J., and an interlocutory decree as to the scope of the hearing of that suit on the merits was entered by *Goldberg*, J. The hearing of the suits together on the merits was by *Brogna*, J.

*Phillip Cowin*, for State Realty Company of Boston, Inc.

*Angus M. MacNeil*, for MacNeil Bros. Company and another.

QUA, C.J. These are two suits in equity. The first is a suit by the original plaintiff, hereinafter called State Realty, against the plaintiff in the second suit, hereinafter called MacNeil Bros., and another for an order in accordance with the Federal soldiers' and sailors' civil relief act authorizing foreclosure of a mortgage given by MacNeil Bros. to Angus M. MacNeil, hereinafter called MacNeil, and subsequently assigned to State Realty, covering some twenty-one parcels of real estate containing about one hundred tenements in Somerville and Cambridge. The second suit is by MacNeil Bros. against State Realty for redemption from the same mortgage. The two suits were tried together, and the evidence is reported.

We deal first with certain preliminary matters.

At the outset we are confronted with a motion by State Realty to dismiss the appeals of MacNeil Bros. from the final decrees on the ground, among others, that MacNeil Bros. did not give the clerk an order for the preparation of the papers within ten days after the cases became ripe for

final preparation and printing of the record, as required by
G. L. (Ter. Ed.) c. 231, § 135, as amended by St. 1941, c. 187,
§ 1. Even where, as here, both parties appeal each must
give the order in writing for preparation of the papers.
*Turgeon* v. *Turgeon*, 330 Mass. 402. Compare *Schaffer* v.
*Leimberg*, 318 Mass. 396, 406, where the failure related
to the payment of the estimated cost, and the holding of
this court was in effect that the cost need not be paid twice.
The affidavit presented to us by State Realty, taken with
the docket entries, shows that the cases became ripe for final
preparation and printing of the present record on February
23, 1955, when the trial judge finally determined what mat-
ter should be printed. Rule 2 (F) of the Rules for the Regu-
lation of Practice before the Full Court (1952), 328 Mass.
694. It is true that the docket entries appear to show that
on May 6, 1955, one of the judges of the Superior Court
made an order, purportedly under Rule 7, which might be
construed as intended to extend the time for the filing of a
designation by MacNeil Bros. until May 27, 1955, but this
order was not made until after the time from February 23,
1955, allowed by G. L. (Ter. Ed.) c. 231, § 135, for ordering
the preparation and printing of the record had expired.
After the statutory period has once expired no order can be
made having the effect of extending the statutory time.
This is a matter of interpretation of § 135. *Buchannan* v.
*Meisner*, 279 Mass. 457, 460–462. *Stanwood* v. *Adams
Garage Inc.* 281 Mass. 452. *Flood* v. *Grinnell*, 286 Mass.
214. *Royal Tool & Gauge Corp.* v. *Clerk of the Courts for the
County of Hampden*, 326 Mass. 390, 392. See *Gifford* v.
*Commissioner of Public Health*, 328 Mass. 608, 618. There
is nothing in Rule 7 that permits an order inconsistent with
this statutory interpretation. MacNeil Bros. did not give
its order for preparation of the papers within ten days
after February 23, 1955. Its appeals must therefore be
dismissed. However, this has no substantial effect upon
the outcome of the case because the matters hereinafter
dealt with are open on the appeals of State Realty and
are not determined more favorably to MacNeil Bros. than

in the court below. *Turgeon* v. *Turgeon*, 330 Mass. 402, 409.

There was no error in overruling the demurrer of State Realty in the second suit. The bill for redemption is somewhat inartificially drawn, but it sufficiently identifies the mortgage and the parties interested in it, alleges that the mortgage is upon property of the plaintiff, and offers to redeem. We do not see that anything more need appear upon the face of the bill. Moreover, the demurrer is to the whole bill and not to any part of it. *Baker* v. *Paeff*, 318 Mass. 366, 367–368. *Collector of Taxes of Lowell* v *Slafsky*, 332 Mass. 700, 704.

We think there was no error in the overruling of State Realty's plea in the second suit. The plea is double, but we pass that point, especially as only the first part has been argued. The contention there is that the matter contained in the second suit, that is, MacNeil Bros.' claim for redemption from the mortgage, should have been set forth by way of counterclaim in State Realty's suit for an order authorizing foreclosure of the mortgage and not by way of independent bill, because of the provisions of Rule 32 of the Superior Court (1954) requiring that the "answer, without cross bill, must set up any counterclaim . . . arising out of the transaction which is the subject matter of the suit, which might be the subject of an independent suit in equity," and that "No cross bill shall be filed." The rule also contains a provision that the court "in its discretion may strike out any counterclaim if it appears that the matter cannot conveniently be determined in the suit." State Realty's suit was brought under St. 1943, c. 57, as amended in § 1 by St. 1945, c. 120, § 1. These statutes were passed in aid of the Federal soldiers' and sailors' civil relief act, U. S. C. (1952 ed.) Title 50, Appendix, § 532. The subject matter of State Realty's suit was merely the obtaining of a court order required by the Federal law before resort could safely be had to the means of foreclosure by entry and sale under power commonly employed for generations in foreclosing mortgages in this Commonwealth. It was not the purpose of the State statutes or

of the Federal statute or of Rule 32 to require the bringing
of a plenary suit such as is regularly employed in many
States for the foreclosure of mortgages, a method seldom
employed here.     *Morse* v. *Stober*, 233 Mass. 223, 226.   *John
Hancock Mutual Life Ins. Co.* v. *Lester*, 234 Mass. 559, 563.
See *Old Colony Trust Co.* v. *Great White Spirit Co.* 178 Mass.
92; *Hoffman* v. *Charlestown Five Cents Savings Bank*, 231
Mass. 324, 329.   We do not doubt the power and duty of
equity courts in this Commonwealth to protect the service-
man to the full extent required by Federal law, but we think
it was the purpose of the State statutes hereinbefore cited to
provide means of furnishing that protection without the
abandonment of the simple methods of foreclosure in com-
mon operation and the substitution of long drawn out and
expensive procedures to which we were not accustomed.
For these reasons we think that a claim by a mortgagor for
redemption and accounting need not necessarily be pressed
by way of counterclaim to a bill by a mortgagee for a simple
court order under a statute permitting him to proceed to
foreclose by local methods.   If this is not so, many fore-
closures can be turned into prolonged accountings while
the property deteriorates.   At least it seems there is no re-
versible error in overruling a plea which sets up the proce-
dural defence of failure to file a counterclaim that might well
be struck out under Rule 32 before the hearing of the case.
If a mortgagor should tender every cent due to a mortgagee
while the latter was advertising a proposed foreclosure sale
but before actual foreclosure by sale would the mortgagor
be barred from maintaining his suit for redemption because
he had failed to set up a counterclaim in the mortgagee's
suit for authority to sell?   We think not.   We do not over-
look the fact that a counterclaim was adjudicated in *Lynn
Institution for Savings* v. *Taff*, 314 Mass. 380, but the ques-
tion there was whether certain personal property was subject
to the mortgage and the issue therefore related to the kind of
order to be made by the court in permitting the sale.   No ques-
tions of redemption and accounting were involved.   See fur-
ther *Guleserian* v. *Pilgrim Trust Co.* 331 Mass. 431, 432–434.

A fourth problem arises from an interlocutory decree made in the second case at an early stage in the litigation that the hearing on the merits proceed "without any claim for waste . . . [or] damages to the plaintiff [MacNeil Bros.] arising out of the entry[1] and possession of the premises . . . by the defendant [State Realty] . . . or any evidence pertaining to the alleged waste" and that the plaintiff (MacNeil Bros.) "reserves its right to press an action for waste or damages resulting from the entry and possession by the defendant . . . in any other action or actions." State Realty appealed from this decree. It will be observed that this decree went beyond the mere order of presenting the evidence and purported to cut the matters of waste and damages entirely out of the case and to reserve those matters for determination in some future case or cases. It seems to us, however, that these matters were necessarily involved in and a part of the accounting in a suit for redemption, and that the course taken resulted in splitting the cause of action into parts and was beyond the power of the court. It deprived Mac-Neil Bros. of any credit for waste and damages in this case. *Canning* v. *Shippee,* 246 Mass. 338, and cases cited. *Franklin* v. *North Weymouth Cooperative Bank,* 283 Mass. 275, 279–280. *Dearden* v. *Hey,* 304 Mass. 659. *Derderian* v. *Union Market National Bank,* 326 Mass. 538. The hearing was conducted in accordance with the interlocutory decree, and the error is of course reflected in the final decree.[2] We shall have occasion to deal with it in that connection.

Facts as found by the trial judge are these: Sometime prior to 1950 the law firm then consisting of Orlov, Cowin and Cohen and later of Orlov and Cowin, hereinafter called the firm, performed services for MacNeil as an individual, but being unable to agree with him as to the amount of its fees, threatened to attach real estate of two corporations

---

[1] State Realty had actually made an entry before either suit was brought.

[2] Paragraph 11 of the final decree provided: "This suit is determined without adjudicating the rights of the plaintiff, MacNeil Bros. Company to any claim for damages for waste against the State Realty Company of Boston, Inc., and any and all rights for such claims are reserved to the plaintiff." — REPORTER.

controlled by him, and drew up a writ with an ad damnum of $25,000. MacNeil desired to avoid such an attachment. After further negotiation it was agreed that MacNeil would have MacNeil Bros., also a corporation controlled by him, give a mortgage to him on the properties in Somerville and Cambridge for $25,000, the ad damnum in the writ, and that he would assign the mortgage to the firm upon a so called security agreement to secure the firm for any amount that the firm might recover in the proposed action against MacNeil. This understanding was carried out. MacNeil Bros. gave a mortgage to MacNeil which he in effect assigned to the firm and the firm later assigned to State Realty, a corporation formed by the firm whose sole function has been to hold the mortgage and manage the properties. The security agreement contained provisions for realizing upon the note and mortgage therein pledged as security in the event of failure to pay any judgment that the firm might recover against MacNeil by sale at any broker's board or at public or private sale and for purchase at any such sale by an assignee of the note and mortgage. There were many other provisions which we do not consider it necessary to set forth here.

On March 15, 1954, the firm did recover judgment against MacNeil in the sum of $10,079.12, and when the judgment was not paid within the time stipulated in the security agreement, after notice to MacNeil and MacNeil Bros., the firm caused the note and mortgage to be sold at a sale which seems to have amounted substantially to an auction held under the auspices of R. L. Day and Company at the office of the Boston Real Estate Board at 7 Water Street, Boston. MacNeil was a member of this board. The firm bought in the note and mortgage for $8,000 and credited that sum, less $40.60 expenses, on the judgment. After the organization of State Realty the firm, as stated above, caused the note and mortgage to be assigned to that corporation, which now claims the right as absolute owner of the note and mortgage to enforce them against the properties to the full amount of $25,000 and interest, regardless

of the credit just mentioned and of the fact that the judgment recovered by the firm was for less than half the amount named in the note.

The trial judge found that the sale by the pledgees of the note and mortgage was invalid. We are unable to follow him in this finding. The facts fully appear in the evidence. The judge may have been influenced in his finding by evidence, some of it conflicting, that the sale was held in a back room reached through several doors on the second floor of a privately owned building. On the other hand there was much evidence that persons were going to and coming from this room, which was a large one. There had been general advertising of the time and place of sale. Other securities were sold at the same time and place. We cannot believe that any person of average intelligence would have had difficulty in finding a sale conducted under the auspices of R. L. Day and Company at the offices of the Boston Real Estate Board at 7 Water Street in Boston. Sales of securities can hardly be conducted on the street like sales of real estate. See *Winchester Rock & Brick Co.* v. *Murdough*, 233 Mass. 50; *DesLauries* v. *Shea*, 300 Mass. 30, 34–36. We find nothing in G. L. (Ter. Ed.) c. 100, § 5, as amended by St. 1932, c. 156, § 1, and § 6, as appearing in St. 1949, c. 297, § 4, that renders a sale invalid because the person who acted as auctioneer was licensed only in another town. Neither do we find anything in G. L. (Ter. Ed.) c. 255, §§ 8–10, affecting the validity of a sale made in accordance with a power contained in the instrument of pledge.

Moreover, in any event it is difficult to see how the validity of a sale made by assignees of a mortgage to themselves purportedly under the terms of an assignment in the nature of a pledge and for the purpose of cutting off any interest of the mortgagee-pledgor is material in proceedings solely between the mortgagor and the successor of the assignees to which the original mortgagee-pledgor is not a party.

The judge, however, made certain other important findings which are supported by much evidence and cannot be pronounced plainly wrong. He found that the note and

334 Mass. 294                                                    303

State Realty Co. of Boston, Inc. *v.* MacNeil Bros. Co.

mortgage given by MacNeil Bros. to MacNeil and by him
assigned to the firm and by them assigned to State Realty
was given and delivered "for the special purpose, as security
only, for and to the extent, of the satisfaction of any
judgment which . . . [the firm] might recover in the said
action . . ."; that Orlov (a member of the firm) knew
this; that the note and mortgage were written for $25,000
because that was the ad damnum in the writ upon which
the firm intended to make its attachment and because all
parties understood that the liability would not exceed that
amount. He found that State Realty is not a holder in
due course. He ruled that the note is security for the
amount of the judgment only. The ruling was right. In
suits in equity for foreclosure of and redemption from mort-
gages the full facts can be shown as to what was intended
to be secured. *Holbrook* v. *Bliss*, 9 Allen, 69. *Freeland* v.
*Freeland*, 102 Mass. 475, 480. *Hannan* v. *Hannan*, 123
Mass. 441. *Hampden Cotton Mills* v. *Payson*, 130 Mass. 88.
*Donohue* v. *Chase*, 139 Mass. 407, 409. *Taft* v. *Stoddard*,
142 Mass. 545. *Saunders* v. *Dunn*, 175 Mass. 164. *Brouil-
lard* v. *Stimpson*, 201 Mass. 236. *Page* v. *Franklin*, 214
Mass. 552, 555. *Glassman* v. *Ficksman*, 238 Mass. 580,
586. *Pearson* v. *Mulloney*, 289 Mass. 508, 515. *Kagan*
v. *Levenson*, *ante*, 100, 104. Tiffany on Real Property
(3d ed.) § 1401. G. L. (Ter. Ed.) c. 244, § 27. This prin-
ciple has been applied in cases where the amount actually
intended to be secured was found to be less than the face
amount of the mortgage note. See in addition to the cases
cited above *Hart* v. *Goldsmith*, 1 Allen, 145, 148–149; *Mer-
chants' & Farmers' Bank* v. *Rainer*, 213 Ala. 530; *Trustees
of Mutual Loan Association* v. *Tyre*, 26 Del. 88, 97; *Walker*
v. *Carleton*, 97 Ill. 582; *Hicklin* v. *Marco*, 56 Fed. 549. The
real purpose for which it is found the $25,000 note was given
distinguishes the case from *Seder* v. *Gould*, 274 Mass. 223.

We are not aware of any requirement that a plaintiff
seeking to redeem must set forth in his pleading the items
of indebtedness which the mortgage was given to secure or
other items of the accounting for which he asks.

State Realty contends that MacNeil Bros. is estopped to deny that the note and mortgage were given for some kind of debt owed by MacNeil Bros. to MacNeil and is estopped to claim that the real object was to secure a judgment which the firm might recover against MacNeil in its proposed action. A short answer to this contention is that the evidence makes clear that the firm and its creature, State Realty, had full knowledge at all times of the true purpose of the note and mortgage and were in no respect deceived or misled relative thereto. The evidence of any debt from MacNeil Bros. to MacNeil was most vague and unconvincing. In one place it was referred to as for services and in another as for money lent. No details appeared as to its amount or the time or circumstances of its supposed creation.

It is contended that there was error in admitting MacNeil's testimony that the books of MacNeil Bros. did not show that the mortgage was given as payment of a debt or as payment for anything. If there was error in this, the evidence, in view of all the other evidence in the case, was too trifling to have affected the findings. See *Commonwealth* v. *Best*, 180 Mass. 492, 495–496.

We now turn to the accounting as embodied in the final decree appealed from in the second case.

In our opinion the sum of $2,000 received by or in behalf of the firm from one Dunn upon delivery by the firm of a partial release of one of the mortgaged parcels should not be allowed as a credit to MacNeil Bros. It appears from exhibit 20 that MacNeil Bros. agreed that the firm should not be obligated to allow this credit. See also exhibit 21.

Findings of the judge show that after State Realty took possession under the mortgage and began to collect the rents MacNeil attempted in various ways to prevent such collection. He "brought several law suits to embarrass, restrain and enjoin" State Realty. His activity "created confusion in the management of the properties, and has required greater effort and attention than might otherwise have been necessary." The judge found that $2,000 would be the fair

value of legal services to the mortgagee in defending these suits and in bringing other proceedings to establish and maintain its possession. However, he disallowed this item. It seems to us that it was a proper item of charge and should have been allowed. *Bangs* v. *Fallon,* 179 Mass. 77, 85. *Haczela* v. *Krupa,* 219 Mass. 261. *City Institution for Savings* v. *Kelil,* 262 Mass. 302, 307. *Altobelli* v. *Montesi,* 300 Mass. 396, 401. *Davis* v. *Continental Realty Co.* 320 Mass. 428, 431. *Kacouris* v. *Loukas,* 333 Mass. 44, 50. G. L. (Ter. Ed.) c. 244, § 20.

The judge found that liability insurance the premium for which was $1,187.68 was "reasonable for the protection of the mortgagee in possession." The properties are found to have been in a "deplorable" condition. We think that in accord with recent suggestions this item should have been allowed. Am. Law of Property, § 16.103. Glenn on Mortgages, § 213. See *Altobelli* v. *Montesi,* 300 Mass. 396, 400. Compare, however, *Saunders* v. *Frost,* 5 Pick. 259, 270; *Boston & Worcester Railroad* v. *Haven,* 8 Allen, 359, 362.

Except as herein stated, we agree with the items in the account as found by the trial judge and stated in the decree appealed from in the second case.

It remains to deal with what we regard as the most difficult problem in these cases, and that is how this litigation is ever to be brought to an end. The claim of MacNeil Bros. for so called waste and damages in itself seems likely to involve issues as to what repairs were made or ought to have been made and at what cost and what rents ought to have been collected with respect to properties containing at the beginning about one hundred tenements for a period now approaching two years. If inquiry into this matter is to be conducted with the same insistence and pertinacity that have hitherto marked the conduct of this litigation no end is even in sight. We think MacNeil Bros. should be permitted to redeem, if it is able and sees fit, without waiting for a final decision in the matters of waste and damages, especially as it insists that State Realty is insolvent. Such

a course cannot harm State Realty, since it will receive all
that it could ever get, and the only issue left will be whether
it owes something to MacNeil Bros. on account of waste and
damages. That issue will eventually be determined in this
same suit and not in some other suit or action hereafter to
be brought.

Although we agree with much that is contained in the
decree in the second suit (MacNeil Bros. *v.* State Realty for
redemption) entered November 26, 1954, we do not agree in
some particulars already mentioned, and in any event the
accounting should be brought down to date. We think con-
venience will be served if that decree is wholly reversed and
a new decree is entered as hereinafter provided.

Therefore: in the second suit (MacNeil Bros. *v.* State
Realty for redemption) the interlocutory decree overruling
State Realty's plea and demurrer is affirmed; the inter-
locutory decree of October 20, 1954, that the trial should
proceed without regard to waste or damages is reversed;
State Realty's appeal from an interlocutory decree entered
December 17, 1954, as of December 16, 1954, relating to the
payment of money into court, having become immaterial,
is dismissed; the final decree of November 26, 1954, is re-
versed, and the case is to stand for further hearing to bring
the accounting down to the latest practicable date substan-
tially in the manner of the present decree with such changes
in the figures as the passing of time has made necessary and
with the changes indicated in this opinion. A new decree
permitting redemption is then to be entered which shall be
substantially similar to the decree of November 26, 1954,
except as hereinbefore stated and except for necessary
changes in amounts and except that: (1) The first para-
graph of the present decree, wherein the sale of the mort-
gage and note under the security agreement is held void,
shall be omitted, (2) The eleventh paragraph relating to
waste is to be omitted, (3) The thirteenth paragraph[1] is to
be omitted, (4) Proper credit is to be given to MacNeil
Bros. for the sum paid by it into court and the disposition
of that sum in the event of redemption is to be provided

334 Mass. 294                                           307

State Realty Co. of Boston, Inc. *v.* MacNeil Bros. Co.

for, (5) The part of the decree providing for immediate redemption is to be conditional upon MacNeil Bros. waiving, within such time and in such manner as the court may fix, its right to have waste and damages taken into account in ascertaining the amount it must pay to redeem, leaving the issue of waste and damages for later determination in this suit, and (6) The decree shall provide that if MacNeil Bros. does not waive its right to have waste and damages considered in fixing what it must pay to redeem or does not redeem in accordance with the decree now to be entered the case is to proceed for the determination of the issue of waste and damages, to be followed by a final decree for redemption in which any sum found due for waste and damages is to be taken into account with the other items.

In the first suit (State Realty *v.* MacNeil Bros. for authority to foreclose the mortgage) such modifications, some of which will be considerable, are to be made as are required by the directions herein given as to the second suit in order to produce a consistent result, and as so modified the decree is affirmed.

MacNeil Bros.' appeals from the final decrees are dismissed.

No costs of any of these appeals shall be allowed.

*So ordered.*

---

[1] Paragraph 13 provided as follows: "In the event that the plaintiff MacNeil Bros. Company fails within thirty days, or such further time as may be allowed by the court, to pay the sums established by this decree then a supplemental decree is to be entered dismissing the bill of complaint with costs as taxed in an action of law." — REPORTER.