ROBINSON *vs.* RICE & MOORE.

The Statute providing that "every mortgage of goods and chattels shall be absolutely void as against the creditors of the mortgagor, unless the mortgage shall be filed in the office of the township clerk where the mortgagor

resides," (*R. S. Ch.* 81, *Tit.* 19, § 10,) so far as relates to mortgages on enrolled vessels, is in conflict with the law of Congress, relating to mortgages upon such vessels, and so far void.

Case reserved from Wayne Circuit.

This was an action of replevin. The plaintiff declared for the unlawful detention of the schooner Sparrow, and the defendant plead the general issue.

The case was tried before the Circuit Judge for the county of Wayne. On the trial, it was proved by the plaintiff, that on the 16th of April, 1853, one Henry Wilson, of Detroit, was the owner of the schooner Sparrow, and on that day executed a mortgage to the plaintiff upon the said schooner, in due form, conditioned for the payment of nine hundred dollars, which sum, with interest, still remained due. That the transaction was *bona fide*, and that said mortgage was duly recorded in the office of the collector of the Port of Detroit, pursuant to the acts of Congress. That at the time said mortgage was given, said schooner was duly licensed for the coasting trade, &c., and enrolled at the Port of Detroit, pursuant to the acts of Congress.

The proof of conversion, by demand and refusal, was admitted. The defendant proved that a judgment was rendered in the Circuit Court of the United States for the District of Michigan, in favor of Albert Fearing and David Whiton, and against said Henry Wilson, for one thousand three hundred and twenty-nine dollars and seventy-nine cents, and damages and costs, upon which execution issued in the usual form. That the defendants were the Marshal and Deputy Marshal of said District, and as such, served said execution, and by virtue thereof, and subsequent to the recording of said mortgage, levied upon said schooner. That said Wilson was a resident of the city of Detroit. That said mortgage was not recorded in the office of the city clerk of said city, and that from the time of its execution,

up to the time of said levy, said schooner continued in the possession of the said Wilson.

Judgment was rendered in favor of said plaintiffs, and against said defendant, subject to the opinion of the Court, upon a motion for a new trial as to the validity of said mortgage against creditors, &c.

Upon this state of facts, the following questions arose :

1. Does the act of Congress in reference to the recording of mortgages upon enrolled and licensed vessels, supersede so much of the state statute as refers to the recording of similar mortgages in the township or city clerk's office ?

2. Is a mortgage on an enrolled vessel invalid and void against creditors, &c., unless recorded in the office of the township or city clerk where the mortgagor resides?

And thereupon, the Circuit Judge reserved these questions for the opinion of the Supreme Court.

*Wilcox & Gray*, for plaintiff.

1. The act of Congress and the State law conflict, and the subject matter being within the legislative power of Congress, the State law is void. (*Prigg* vs. *State of Pennsylvania*, 16 *Pet.* 617, 618; *Houston* vs. *Moore*, 5 *Wheat.* 22.)

2. The subject matter being within the legislative power of Congress, and it having exercised that power, " all State legislation upon the same subject matter, whether in conflict or not, is superseded and excluded." (2 *Wheat.* 48 ; 16 *Pet.* 654; 5 *Wheat.* 1; 9 *Wheat.* 197; 11 *Pet.* 102; 14 *Id.* 590; 1 *Woodbury & Minot*, 401; 4 *Sand.* 492.)

*Porter & Gardiner*, for defendants.

1. The mortgage was absolutely void under our statute, for want of proper filing. (*R. S.* 327, § 10; *Amended Law of* 1849, 168, § 7 ; 19 *Wend.* 515 ; 17 *Ib.* 492 ; 23 *Ib.* 658 ; 8 *Barb.* 102.)

2. The act of Congress of 1850, concerning mortgages upon vessels, did not render this statute void. The two do not conflict in terms. The law of Congress simply declares that mortgages not recorded in the manner prescribed therein shall not be valid. This is not equivalent to saying that all mortgages so recorded shall be valid, because,

1. Our statute, which is similar in its effect, does not render mortgages filed under it valid.

Omitting several clauses unimportant here, it reads in this wise: " Every mortgage of goods and chattels shall be absolutely void as against the creditors of the mortgagor, unless the mortgage shall be filed in the office of the township clerk," &c.

The expressions, " *No mortgage shall be valid,*" and " *Every mortgage shall be absolutely void,*" are synonymous.

As to the validity of mortgages under our statute, or under that of New York, from which it is coped, see 17 Wend. 492; 23 Ib. 658–9; 8 Barb. 102.

2. In 4 Sand. S. C. R. 492, an act of Congress had required the owner of every steamboat running after dark, to carry one or more signal lights. It was contended, *that this act rendered it necessary to carry only one light, and that a law of New York requiring every steamboat to carry at least two lights was in direct collision with it.*" "We answer," said the Court, " that the addition of a further qualification *is not in direct conflict* with a law prescribing the first qualification. The *act of Congress does not provide, that it shall be sufficient for a steamboat, navigating at night, to be equipped with one light only.*

So also held Judges Betts and Nelson in the United States Courts. ( *Vide 4 Sand.* 512.)

Again. Whether our statute is repugnant to the act of Congress must be determined by the same principles, as whether one act of the Legislature has repealed a former one.

" A second law upon the same subject does not repeal a

former one without a repealing clause or negative words, unless so clearly repugnant as to imply a negative." 4 *How.* 53; *Broom's Legal Maxims*, 12; *Dwarris on Stat.* 658.)

3. A State may regulate its internal police, though it thereby affect commerce, if it do not directly conflict with an act of Congress. (5 *Cond. Rep.* 574; 2 *Pet.* 252; 11 *Ib.* 137, 139; 10 *Ib.* 147, 149, 151, 156; 16 *Ib.* 625; 5 *How.* 579 *to* 584, 588–9, 595, 617, 624, 627–8; 7 *Ib.* 404, 410, 414, 429, 470, 490, 498, 499, 520, 524, 526, 561, 572; 4 *Sand. S. C. R.* 492, 508 *to* 511.)

4. *Our statute is strictly a police regulation.* (5 *Cond. Rep.* 574; 11 *Pet.* 139, 147; 16 *Ib.* 625; 5 *How.* 617; 7 *Ib.* 523; 4 *Sand. S. C. R.* 508 *to* 510, *and the cases from* 5 *How. and* 11 *Pet. at large.*)

By the Court, WING, J.

The act of Congress to which reference is made in the first question, provides, that " no mortgage of any vessel of the United States shall be valid against any person, other than the mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such mortgage be recorded in the office of the Collector of Customs where such vessel is registered or enrolled." (*Act Cong.* 1850.)

The statute of our State provides that " every mortgage of goods and chattels shall be absolutely void as against the creditors of the mortgagor, unless the mortgage shall be filed in the office of the township clerk, of the township where the mortgagor resides." This is a copy of so much of chap. 81, tit. xix, sec. 10, Rev. Stat. 1846, as bears upon the point made.

It is not questioned but that the mortgage in question is absolutely void under the statutes of this State, because not recorded in the City Clerk's office. (17 *Wend.* 492; 19 *Wend.* 515; 23 *Wend.* 658; 8 *Barb.* 102.)

There can be no doubt that our State Legislature had the

right to legislate upon the subject matter of the State law, as it was intended thereby to protect creditors and purchasers against secret mortgages and liens upon personal property of every kind, including boats and vessels. It is not a matter prohibited to the States, and it is not denied that Congress also had the right to legislate as they did in respect to mortgages on boats and vessels, as it fell within their powers to regulate commerce. In fact, all that concerns the transfer of ships, vessels and steamboats, except so far as their sale is governed by laws common to all personal property, has hitherto been left under the entire control of the United States and the laws enacted by Congress. The power to legislate in regard to this species of personal property can hardly be said to be exclusive in Congress. If not, then it is concurrent in both governments, and until Congress did legislate upon the subject, the law of this State was operative, and as much so in respect to this species of property as any other personal property; but it must be confessed that the application of the law to boats and vessels is very difficult, as in most cases they are owned by many individuals, living generally in different States, for the purpose of controlling business for their vessels, and it not unfrequently occurs that but a very small portion of the interest in any one boat or vessel is owned by persons residing in the same place. The property itself is unlike any other personal property. It passes from port to port, and from State to State, from one end of the chain of lakes to the other, almost always in motion, and seldom in port, and seldom visible, like other property. It would seem that it would be highly appropriate, if not necessary, that all the legislation needed in relation to the title of this kind of property should be confided to Congress. It has long been a legal requirement that the bill of sale of enrolled and licensed vessels should be incorporated, or rather set forth, in her papers, and recorded in the office of the Collector where her papers are taken out. A mortgage is a transfer

of title upon condition, and after condition broken, it operates as a perfect transfer, or sale, and therefore should be deposited or recorded in the Collector's office, for the protection of the government, as well as others, and it was doubtless for this reason the law of Congress in question was enacted.

The defendants insist that the State law, so far as it embraces enrolled vessels, is void, because it is in conflict with the act of Congress. The plaintiff, on the other hand, insists that it is not in conflict with the act of Congress, because the requirements of the two laws are different, and therefore there should have been a compliance with both laws. He insists that the act of Congress does not provide that mortgages shall be good if filed in the office of the Collector, and thus cover the whole ground, and exclude State legislation; but only that it shall be void if not so filed, and he insists that it only adds another requirement, which is in addition to that specified in the act of Congress, and that it was competent for our legislature to do so.

Then what is the nature of this concurrent power, and how and to what extent may it be exercised by either, or both governments? Can the laws enacted upon the same subject matter by the State and the general government, be said to conflict, unless they are directly opposed to each other? In endeavoring to find an answer to these questions, we do not propose to sketch the history of the decisions of the United States and State Courts, upon the subjects embraced by these questions. Neither do we intend to attempt to reconcile the decisions of the different Judges with each other. Scarce a case can be found upon this subject, which has been decided by the United States Supreme Court, in which the majority of the Court who united in the decision, have been agreed in all the doctrines stated in the opinion in which the decision was made. In these cases, the Judge giving the decision in the case, has attempted to define the powers of the United States, and the States respectively, and to these defi-

31

nitions, many of the Judges, and sometimes a majority of those who agreed to the general result, have dissented. The Judges have had frequent occasion to correct their habit of stating general propositions or postulates, from which to draw analogies or proofs, which were well enough when considered in reference to the particular case in hand, but which were found to be unsound as general and universal propositions to be applied to all cases upon similar subjects. We shall, therefore, state a rule which is deemed to be applicable to such a case as this, and which is found set forth in both Kent's and Story's Commentaries, as the true rule, without attempting to state the qualifications to it, or the names of the Judges who have since dissented from it. And we state this rule because we find it established in a case which bears the strongest analogy to that before us, of any we have seen in the United States Court.

It seems to be admitted that an affirmative power in Congress is not necessarily incompatible with a like power in the States, but in the exercise of these powers by the two governments, if there be a conflict between them, the law of the State must give way. To the extent of the interference, its operation is suspended. So far there appears to be no difficulty in laying down a clear rule.

Then what shall be said to be a conflict? Judge Story says, "it is a question of a delicate nature to say how far, in the exercise of a concurrent power, the actual legislation of Congress supersedes the State legislation, or suspends its operation over the subject matter. Are the State laws inoperative only to the extent of the actual conflict, or does the legislation of Congress suspend the legislative power of the State over the subject matter?" He admits that no universal answer can be given to such an inquiry, but that it must depend upon the nature of the power, the effect of the actual exercise, and the extent of the subject matter, and he refers to the case of Houston *vs.* Moore, (5 *Wheat.* 1, 21–2,) to illustrate the

rule of law on this point. · That case brought in question a law of Pennsylvania in relation to the militia of the State. An individual was court martialed for not obeying a call with a view to be taken into the service of the United States. Judge Washington says Congress has power by the Constitution, to provide for organizing, arming, and disciplining the militia, and the framers of the Constitution, it is presumable, contemplated a full exercise of those powers," and he remarks, " Congress has provided for these subjects in the way in which that body thought the best," &c. After this can the State government enter upon the same ground, and provide for the same objects as they may think proper, and punish in their own way, &c. It is contended that unless such State laws are in direct contradiction to those of the United States, they are not repugnant to the Constitution of the United States. The Judge then goes on to remark, " the two laws may not be in such absolute opposition to each other as to render the one incapable of execution without violating the injunctions of the other, and yet the will of the one Legislature may be in direct collision with that of the other. This will is to be discovered as well by what the Legislature has not declared, as by what they have expressed." He further says, " if Congress has declared that the punishment for disobedience to the act of Congress should be a certain fine, if that provided by the State Legislature for the same offence be a similar fine, with imprisonment or death, the latter law would not prevent the former law from being carried into execution. It may be said, therefore, not to be repugnant to it, but the will of Congress is thwarted and opposed."

In the case of Prigg *vs.* Pennsylvania, (16 *Pet.* 539,) a question arose as to the validity of a law of Pennsylvania intended to be in aid of the provisions of the act of Congress of 1793, in reference to fugitives from labor. Judge Story in delivering the opinion of the Court, passes directly upon the question decided by Judge Washington extracted above. He

remarks, " if Congress have a constitutional power to regulate a particular subject, and they do accordingly regulate it, in a given manner, in a certain form, it cannot be that the State Legislature have a right to interfere, as it were by way of complement to the legislation of Congress, to prescribe additional regulations and what they may deem auxiliary provisions for the same purpose. In such a case, the legislation of Congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any further legislation to act upon the subject matter. Its silence as to what it does not do, is as expressive of what its intention is, as the direct provisions made by it."

Other Judges, in giving the opinion of the Supreme Court in other cases, have taken a different view of this question, but it will be seen that the cases in which the decisions were given are of a different character from those we have cited. Some were cases of direct conflict, and others were cases in which the objects to be accomplished by the two laws were entirely different. In the case last cited, Judge Daniels, who concurred in the judgment rendered by the Court, remarked: " There is this reserve in cases of concurrent authority, where the laws of the State and of the Union are in direct and manifest collision on the same subject, those of the Union being the supreme law of the land, and the State laws, so far and so far only as such incompatibly exists, must necessarily yield." Judge Barbour, in the case of New York *vs.* Miles, (11 *Pet.* 139,) maintained the same doctrine as that first cited from the opinion of Judge Daniels. These opinions of single Judges, or even of Courts, should, according to the rule in this respect, laid down by Chief Justice Marshall, in Cohens *vs.* Virginia, (6 *Wheat.* 339,) be restrained to the case before the Court. The case in 11 Pet. 139, involved no conflict of the powers of the general government with those of a State, and see the remarks of Judge Wayne, in the case cited from 16 Pet., as to the opinion of Judge Barbour, in 11 Pet.

In all the cases which we have had an opportunity of ex-

amining, in which legislation by a State upon a subject which was covered by the legislation of Congress was sustained, the object to be accomplished was entirely different in the two acts. This is fully illustrated in the license cases, as they are called, in 5 Howard's R. 504, 581, 583, and passenger cases, 7 Howard, 399, 430, 488, 498, 545, 554; but we have found no cases decided by the Supreme Court of the United States more nearly in point in this case, than those which we have cited from 5 Wheat. 21, 22, and 16 Pet. 539.

A case has been cited by the counsel for the defendants, from 4 Sandf. S. C. R. 492, which they claim supports their defence. It was a case of collision between two boats in the night. The boat charged with doing the injury was an enrolled boat, from Philadelphia. The collision took place in the North River. It was admitted by the Court that a law of Congress required the boat to carry one or more lights, and that, by a law of New York, all boats navigating the waters of the State were required to carry two lights. The Court held that the addition of a further qualification in the State law was not in direct collision with the law of Congress requiring a boat to carry one light. They say "the act of Congress does not provide that it shall be sufficient for a steamboat navigating at night to be equipped with one light only, or that if so equipped she shall be at liberty to navigate in all waters, inland or on the coast." The Judge further remarks: "This case presents the long vexed question as to the extent to which the respective States may go in enacting laws which indirectly or directly regulate commerce. It is still an open question whether this power in Congress to regulate commerce is so far exclusive as to make void all State legislation which regulates commerce in matters not legislated upon by Congress, though the weight of authority is that such legislation is valid." For this opinion, he cites the passenger cases in 7 Howard, 399, and the license cases in 5 Howard, 504. The Court then go on to remark: "If

any principle can be deduced from the decisions and opinions of the Judges, it is this: That each State may pass such laws affecting commerce, as operate within its own limits, not in direct conflict with the provisions of the Constitution of the United States or acts of Congress, as are necessary for the preservation of the life, the health, the personal rights, and the property of its citizens, and those enjoying its protection. To that extent, it appears, the remedial laws of the States must be valid, whether they be called police laws, or by any other name." This broad claim of power may work no mischief, when restricted to the description of conflict which is illustrated by the cases in the United States Courts, but the Court seek by this rule to get a basis broad enough to enable them to hold that the additional requirement of their statute, to that contained in the act of Congress, did not present a case of conflict within their definition of State power, and they accordingly so hold, and it would seem that that should have been sufficient to dispose of that branch of the case involving the question of negligence; but the Court calls to its aid other considerations, as we shall see. The Court remark, " a steamboat carrying but one light within the State escapes the penalty of the act of Congress, but may be subject to pay for an injury occasioned by the omission to comply with the municipal regulations of the State," and to the extent of the implied conflict between the two laws arising from the addition of a light, the Court say, " it is clear to us, the municipal laws of the State must govern. They call it a police regulation, and put it upon the same footing as the laws regulating pilotage and quarantine, which go beyond what Congress has deemed proper at any time to exact on these subjects." These doctrines appear to be at war with those maintained in the cases we have cited from 5 and 16 Peters, and which have not been overruled in any case where the point was actually presented in the case.

. The case last cited is the only one we have seen, which has

been decided in the State Court where the same doctrine was sustained. It was shown on the trial that the direction in which a boat was going, could not be determined in a dark night from one light, and therefore it was negligence in the masters or owners not to display more than one light, while passing in narrow rivers, where the navigation was extremely perilous, where boats and vessels were constantly passing, and where life was endangered by any negligence. Judges Nelson and Betts had already decided, without reference to the law of New York, and in cases arising within the limits of the State, that the masters and owners of vessels were guilty of negligence who did not provide and display on board of their boats at least two lights. If the principle of the common law, or custom, could be applied in such a case, it would appear there was no necessity for a State law. At the same time, it may be, that under such peculiar circumstances, the State law might be sustained.

This question was presented for decision in the case of Beers *vs.* Smith, 9 Ala. Rep. 730, decided at the June term, 1851. It was urged in that, as in this case, that the mortgage should have been recorded in the Register's office, under the State laws, but the Court say, " we feel no hesitation in holding that the statutes referred to, were never designed to apply to the transfer of vessels for the navigation of the ocean. These transfers are subject to marine regulations of a different character, and the object of the statutes, which was to furnish evidence of title, and give notice to creditors and purchasers, could not be affected by registering the trust deed in a particular county, since the vessel continually changes her locality, as the interest or caprice of the owner may suggest. The evidence of title is to be looked for in the ship's papers, and her registration, according to the laws of Congress." What is said of vessels on the ocean, is equally applicable to vessels on these large waters. We have foreign ports in sight of us, and vessels and boats make as long trips as many of the vessels on the ocean.

The object of the two laws in question, in this case, is precisely the same; they both propose to furnish a means of notice to purchasers and creditors. It is true, it may be intended by the act of Congress to accomplish all that the State law does, and more. It is, doubtless, one of its objects to enable the government to know whether the coasting trade is carried on for the benefit of foreigners, or its own citizens, and restrict it to its own citizens. There is no manifest or pressing necessity for the legislation of the State in this respect, though it was doubtless well enough, at the least permissible, until the act of Congress occupied the whole ground.

From what we have said, as well as from the force of the decisions we have cited, we feel constrained to hold as we do, that the law of the State, in so far as it requires mortgages upon vessels or boats to be recorded in the town clerk's office, is in conflict with the act of Congress within the true meaning of the decisions we have cited, and that to the extent of such conflict the law of the State is void.

Let it be certified to the Circuit Court of Wayne County as the opinion of this Court, that the act of Congress in reference to the recording of mortgages upon enrolled and licensed vessels, supersedes so much of the State statute as refers to the recording of similar mortgages in the township or city clerk's office.