SPEICHER *v.* SOWELL.

1. Judicial Sales—Price Control—Equally Divided Court.

    Order confirming sale by receiver of assets of a partnership engaged in manufacturing at which goods were sold above amount permitted by regulation of the office of price administration is affirmed by an equally divided court (56 Stat. at L. 23, as amended by 56 Stat. at L. 767 and 57 Stat. at L. 566).

2. Costs—Public Question—Price Control—Judicial Sales.
   No costs are allowed in suit to determine whether or not war emergency price control regulations applied to judicial sales, a public question being involved (56 Stat. at L. 23, as amended by 56 Stat. at L. 767 and 57 Stat. at L. 566).

Appeal from Wayne; Miller (Guy A.), J. Submitted January 13, 1944. (Docket No. 53, Calendar No. 42,607.) Decided May 17, 1944. Rehearing denied June 30, 1944.

Bill by Walter D. Speicher against Nina Sowell and another to dissolve a partnership. On order to show cause why sale of assets by receiver should not be confirmed. Administrator of Office of Price Administration intervened. Sale confirmed. Administrator of Office of Price Administration appeals. Affirmed by an equally divided court.

*Arnold F. Zeleznik*, for receiver.

*Thomas I. Emerson, Fleming James, Jr., David London, Morton Abrahams, James C. Gruener, A. D. Ruegsegger, Abram Sapiro*, and *Albert E. Smith*, for intervener.

REID, J. (*for affirmance*). This is an appeal from the order and decree of the chancery court confirming report of receiver Ona Dunlop of sale of assets in the winding up of the affairs of a partnership which had engaged in manufacture. We quote from the opinion of the trial judge:

"The exact question involved is this: Does the act of congress creating the office of price administration* give to that office power to fix maximum or

---

. * See 56 Stat. at L. 23, as amended by 56 Stat. at L. 767 and 57 Stat. at L. 566 (50 USCA, § 901 *et seq.*).—REPORTER.

ceiling prices which may be realized upon liquidation sales in State courts which are carried out in every particular lawfully under State laws?

"The carrying on of a continuing business by a receiver appointed by a State court is not involved here. Nor does this case require the examination of the rules and regulations adopted by the price administrator. Those regulations can rise no higher than their source. The act of congress is that source. Congress may by its acts, within its delegated powers, create administrative bodies. It may delegate the power to those bodies to adopt administrative rules and regulations, but those rules and regulations must be within bounds and rules laid down by congress in its enabling acts. To allow such bureaus and administrative bodies to go beyond the carrying out of the orders of congress would be to permit the former to legislate and the latter to delegate the power to legislate. * * *

"This court takes judicial notice of acts of congress, treaties, and presidential proclamations. These are the law of the land. It does not take notice of administrative rules and regulations. They are not the law of the land. They are merely administrative acts. The thing to be examined in order to find out the applicability of the price ceilings in question is, therefore, the act of congress. It is to be examined to learn the intention of congress as to what sales it meant to interfere with. Did it mean to hinder State courts in proceedings such as these, where sales are made once only, not in the course of business, in the carrying out of functions of winding up businesses and getting creditors paid? If it did so intend, that meaning must be gotten by construction, because it did not say so directly.

"Title 1, § 2, deals with the powers of the price administrator. The opening sentence of that section is as follows:

"'Sec. 2 (a). Whenever, in the judgment of the price administrator, the price or prices of a com-

modity or commodities have risen or threaten to rise to any extent or in a manner inconsistent with the purposes of this act, he may, by regulation or order, establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this act.'

"Section 1 (a) of the act discloses that its purposes are, among other things, to prevent speculative and abnormal increases in prices and rents, 'to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices, resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency;' to protect persons from undue impairment of their standard of living; to prevent hardships to persons engaged in business, to schools, universities, and other institutions, and to governmental agencies, which would result from abnormal increases in prices; to secure adequate production; to prevent collapse of values; to stabilize agricultural prices; and 'to permit voluntary cooperation between the government and producers, processors, and others to accomplish the aforesaid purposes.'

"This statement of purposes clearly indicates that the act is intended to apply to regularly conducted businesses.    *    *    *

"In section 2 (d) the idea of control over continuing operations is still further emphasized in that the administrator is given power to regulate or prohibit speculative or manipulative *practices* or *hoarding.*"

Section 204 (d) of the emergency price control act of 1942 is as follows:

"The emergency court of appeals, and the supreme court upon review of judgments and orders of the emergency court of appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, of any

price schedule effective in accordance with the provisions of section 206 and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order or price schedule, or to restrain or enjoin the enforcement of any such provision.''

The point involved is simply thus stated: Does the act forbid review by a State court of an attempted regulation which is beyond and outside the scope and provisions of the act? ,

As indicated by the trial judge in his opinion, the act is very evidently aimed at controlling prices at which goods are as a practice and customarily to be sold to the public in the ordinary course of business. That is the real intent and purpose of the act and it is further a matter of common knowledge that judicial sales are distress sales in which the price obtained is for the most part far less than the true value of the property offered for sale. It could scarcely be imagined that from these distress sales the market could by any means become inflated. It is a matter of common knowledge and observation that the contrary is the effect and the occasion of any article in a judicial sale selling at a price exceeding the price fixed by the office of price administration would be a rarity. It is inconceivable that congress really intended to take away from the State courts the right to control their own receivers in a field of activity where deflation instead of inflation is practically the universal rule.

It is not to be presumed that congress intended that each and every official under the guise of the authority of the office of price administration could do as he pleased in the whole field of price fixing and be immune from all accountability save only to one court for the whole United States as a court of review of his actions in the first instance. The very fact that only one court is provided of itself would tend to indicate a contrary intention. The section quoted does not in any explicit terms so provide. A careful review and analysis of section 204 (d) shows that only regulations that are issued *under the act* are protected against review by any tribunal other than the emergency court of appeals and Federal supreme court on appeal from that tribunal. The words "such regulations" thrice recurring in the section can only refer to the regulations and orders preceding in the same section and those are under the act. Regulations issued not under the act are not so protected. In other words, an officer or authority who does some act not authorized by the emergency price control act is not protected therein. He may not do an unauthorized act and receive immunity. Acts *ultra vires* are not placed in the jurisdiction of the emergency court of appeals and it is *ultra vires* for the office of price administration to fix maximum prices at which goods may be sold at judicial sales.

It appears from statements contained in the answer of the intervening defendant that of the items shown by the report of sale by the receiver, all but 12 are either exempted from price control or the prices bid were below the applicable ceiling price and that of these 12 items the amount of the excess bid above the regulation is $2,605.25. The parties stipulate the accuracy of these statements contained in the answer of the intervener. The decree ap-

pealed from approves such sales at such prices.

The intervening defendant claims that the regulations and orders of the office of price administration were all published in the Federal register and therefore entitled to judicial notice. However, it seems they were admitted in evidence at the hearing on the order to show cause why the sale should not be confirmed. It is unnecessary to rule on the question whether we should take judicial notice of these regulations. They are in the record.

For the reasons hereinbefore set forth in this opinion, the decretal order appealed from is affirmed. It is to be expected that the receiver's expenses incident to this appeal will be an item in his account. No costs are allowed. The price administrator was an active party defendant and his intervention was caused by public interest.

NORTH, C. J., concurred with REID, J.

BOYLES, J. (*for affirmance*). I concur in the result reached by Justice REID. His viewpoint receives support in *Davies Warehouse Co.* v. *Price Administrator,* 321 U. S. 144, 151, 154 (64 Sup. Ct. 474, 88 L. Ed. 635). The question decided was whether a public warehouse was exempt from the United States emergency price control act of 1942 (56 Stat. at L. 23, as amended by 56 Stat. at L. 767 and 57 Stat. at L. 566 [50 USCA, § 901 *et seq.*]). In so holding, the court said:

"But as matter of policy congress may well have desired to avoid conflict or occasions for conflict between Federal agencies and State authority which are detrimental to good administration and to public acceptance of an emergency system of price control that might founder if friction with public authorities be added to the difficulties of bringing private self-

interest under control. Where congress has not clearly indicated a purpose to precipitate conflict, we should be reluctant to do so by decision.   *   *   * Congress has given no indication that it would draw all such State authority into the vortex of the war power. Nor should we rush the trend to centralization where congress has not. It could never be more appropriate than now to heed the maxim reiterated recently by the court that 'the extension of Federal control into these traditional local domains is a "delicate exercise of legislative policy in achieving a wise accommodation between the needs of central control and the lively maintenance of local institutions." ' "

NORTH, C. J., and WIEST, J., concurred with BOYLES, J.

BUSHNELL, J. (*for reversal*). I am unable to concur in the affirmance of the order of the trial court.

The record contains supplementary order No. 10 of the office of price administration issued July 15, 1942, and the amendment thereto issued December 11, 1942. These orders expressly exclude judicial sales from the operation of price schedules except when "machinery products" are involved such as in the instant case.

The precise question involved here was not in issue in *Yakus* v. *United States* (*Rottenberg* v. *United States*), 321 U. S. 414 (64 Sup. Ct. 660, 88 L. Ed. 834 [decided March 27, 1944]), but the emergency price control act of January 30, 1942, 56 Stat. at L. 23, chap. 26 (50 USCA, apx., Supp. 2, § 901 *et seq.,* 11 F. C. A., title 50, apx. 25, § 1 *et seq.*), as amended by the inflation control act of October 2, 1942, 56 Stat. at L. 765, chap. 578 (50 USCA, apx., Supp. 2, § 961 *et seq.,* 11 F. C. A., title 50, apx. 43, § 1 *et seq.*), was fully discussed. See, also, *Bowles* v. *Willingham,*

321 U. S. 503 (64 Sup. Ct. 641, 88 L. Ed. 892), decided the same day.

Among other matters decided in the *Yakus* and *Rottenberg Cases* was the proposition whether the act "if construed to preclude consideration of the validity of the regulation as a defense to a prosecution for violating it, contravenes the Sixth Amendment or works an unconstitutional legislative interference with the judicial power." This question is at least analogous to the one determined by the trial judge in the instant case.

The opinion of the court in the *Yakus* and *Rottenberg Cases* directed attention to section 204 (d) of the act which gives the emergency court of appeals "exclusive jurisdiction to determine the validity of any regulation or order issued," et cetera, and the prohibition therein that:

"Except as provided in this section, no court, Federal, State or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order," et cetera.

Our court has recently said in *Book Tower Garage, Inc., v. Local No. 415, International Union, U. A. W. A. (C. I. O.)*, 295 Mich. 580, 587, that:

"Controlling interpretation of Federal law rests with the supreme court of the United States,"

citing Michigan authorities and that:

"It is the duty of the State courts as well as the courts of the nation to guard and enforce every right secured by the Federal Constitution,"

citing authorities. We are "bound thereby" because of the requirement of article 6, § 2, of the Constitution of the United States.

We said in *McPherson v. Secretary of State*, 92 Mich. 377, 393 (16 L. R. A. 475, 31 Am. St. Rep. 587):

"There is no doubt of the rule that where a law of a State conflicts with a law of Congress in a matter in reference to which Congress has the right to legislate the State law must give way to the extent of such conflict. *Robinson* v. *Rice,* 3 Mich. 235, 242."

The district court of the eleventh judicial district of the State of Idaho, in and for the county of Twin Falls, in the unreported case of *Twin Falls County* v. *Hulbert,* decided March 13, 1944, in reply to the argument that the emergency price control act does not by its terms apply to a State, its political subdivisions and agencies, said:

"The cases where State statutes have come in conflict with Federal enactments have been numerous and the courts have uniformly held that under such circumstances the State statute must be construed as either void, modified or amended as the circumstances require. The mere fact that the emergency price control act and the regulations promulgated thereunder are in conflict with the State statute, I. C. A. § 30–708, requiring the county commissioners to sell to the highest bidder does not make that part of the act unconstitutional. The Federal enactment is paramount and has the effect of modifying the State statute. The sale must be made to the highest bidder as provided by the State statutes but not for a price in excess of the ceiling price fixed under the emergency price control act. In case of several bids at the ceiling price the county commissioners have the right to determine the bid to be accepted and the fairest way to make such determination would appear to be by lot. The county commissioners and this court are just as much bound by the Federal enactment as by a State statute and in case of conflict must recognize that the Federal enactment is paramount."

In *Lockerty* v. *Phillips,* 319 U. S. 182 (63 Sup. Ct. 1019, 87 L. Ed. 1339), the court held that Congress

has the power to provide that equity jurisdiction to restrain enforcement of the emergency price control act, so far as Federal courts are concerned, is restricted to the emergency court of appeals, but it did not pass upon the prohibition in the act against the exercise of jurisdiction by State courts in the premises, that question not being in issue. In *Bowles* v. *Willingham, supra,* it met the State question and held such jurisdiction could be withheld in controversies arising "under the Constitution and the laws of the United States."

In the *Yakus* and *Rottenberg Cases* the rule in the *Lockerty Case* was followed and applied. The minority, like the trial judge in the instant case, made much of the threat of suspension of judicial duty "to guard whatever liberties will not imperil the paramount national interest." (See dissent of Mr. Justice Rutledge and Mr. Justice Murphy.)

I cannot conceive that the foundation stones of constitutional liberty are in danger merely because the creditors of a partnership in the process of dissolution are denied the benefit of an excessive price on the receiver's sale of used machinery when all other sellers, because of the exigencies of war, may not obtain a like benefit. Nor can I believe that the integrity of the judicial power of sovereign States is threatened by compliance with a temporary wartime act of congress and the rules and regulations of the Federal agency charged under that act with the duty and responsibility of maintaining "in the interest of the national defense and security and necessary to the effective prosecution of the present war," those price controls which are designed to prevent inflation.

We have long been accustomed to the doctrine of comity between State and Federal courts and that of comity between sovereign States and the Federal

government. No fundamental liberties will be endangered by the judicial application of this doctrine to problems affecting the national economic good.

The order of the trial judge in the instant case is in direct conflict with the reasoning and intendment of the court in the *Lockerty, Yakus* and *Rottenberg Cases, supra,* and being in contravention of the ''supreme law of the land,'' Constitution of the United States, art. 6, § 2, should be vacated and the cause remanded for further proceedings in conformity to this opinion.

It should be so ordered, but without costs.

STARR, BUTZEL, and SHARPE, JJ., concurred with BUSHNELL, J.