MAURICE M. SCHAFFER & another *vs.* GOLDIE LEIMBERG; ADMINISTRATOR OF THE OFFICE OF PRICE ADMINISTRATION, intervener.

Suffolk.    January 2, 1945. — June 21, 1945.

Present: FIELD, C.J., LUMMUS, QUA, WILKINS, & SPALDING, JJ.

*Price Control. Constitutional Law,* War powers, Delegation of powers, Assertion of constitutional rights, Federal statute, State courts, Price control. *War. Jurisdiction,* Federal statute, Price control. *District Court,* Jurisdiction. *Damages,* Penalty. *Practice, Civil,* Appellate Division: appeal.

Statement by LUMMUS, J., as to the war powers of Congress.

The provision of § 205 (e) of the Federal emergency price control act of 1942, that one overcharged may recover either $50 or "treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater," provides for the recovery of remedial damages and not a penalty.

The power to make regulations fixing maximum rents, given by Congress to the administrator of the Office of Price Administration by the emergency price control act of 1942, was validly delegated within the Federal Constitution.

A Federal statute, or a regulation made under it, if valid under the Federal Constitution, is binding on the courts of a State even though repugnant to the Constitution and laws of the State.

The provision, constitutional under the Federal Constitution, of § 204 (d) of the Federal emergency price control act of 1942, denying to all courts, except the Emergency Court of Appeals and the Supreme Court of the United States on certiorari from that court, the power to consider the constitutional validity of regulations made by the administrator of the Office of Price Administration under the authority of the statute, was not a valid ground for a ruling by the Municipal Court of the City of Boston, a court of record of superior and general jurisdiction of actions at law, that it had no jurisdiction of an action brought under § 205 (e) of the statute by a tenant who alleged that he had been charged rent in excess of the maximum rent established by such a regulation; the court had jurisdiction even if the provision

in question was repugnant to the Constitution and laws of Massachusetts.

An appeal by a plaintiff from an order by the Appellate Division in an action in a District Court was not to be dismissed merely for the reason that the estimated expense of the preparation of the papers was wholly paid by an intervener, also an appellant from the order, who stipulated with the plaintiff in effect that the same record might serve for both appeals.

CONTRACT OR TORT.   Writ in the Municipal Court of the City of Boston dated March 26, 1943.

The administrator of the Office of Price Administration was allowed to intervene.

The action was heard by *Riley,* J., who ordered it dismissed for want of jurisdiction.  A report to the Appellate Division was ordered dismissed.  Both the plaintiffs and the intervener appealed.

In this court the defendant filed a motion that the plaintiffs' appeal be dismissed on the ground that they had not paid the estimated expense of preparation of the papers.

The plaintiffs and the intervener filed in this court a stipulation that, "the intervener having paid the expense of the preparation and printing of the record on appeal and the said intervener and plaintiffs having severally claimed an appeal, . . . the appeal herein may be considered the joint and several appeal of the said plaintiffs and intervener upon the record herein filed."

*W. B. Sleigh, Jr.,* for the intervener.

*C. D. Brown,* for the plaintiffs.

*S. Miller,* (*E. Miller* with him,) for the defendant.

LUMMUS, J.   In this action of "contract or tort" begun on March 26, 1943, in the Municipal Court of the City of Boston, the plaintiffs alleged in their declaration that on March 1, 1942, they occupied as a residence an apartment in Boston which they held as tenants at will of the defendant at a rent of $40 a month;  that on October 22, 1942, the administrator of the Office of Price Administration, popularly called the OPA, under the authority of the emergency price control act of 1942 (Act of January 30, 1942, c. 26; 56 U. S. Sts. at Large, 23), issued "Maximum Rent Regula-

tion No. 53," effective as of November 1, 1942, which provided that within territory of which Boston is a part, the maximum rent for housing accommodations rented on March 1, 1942, was to be the rent charged on that date; that for the two months beginning November 15, 1942, the defendant charged the plaintiffs and received from them $5 a month in excess of such maximum rent; and asked relief under § 205 (e) of the emergency price control act of 1942 which provided that a person overcharged might recover either $50 or "treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater," plus reasonable attorney's fees and costs as determined by the court.

The answer began with a general denial, and then set up (a) that the female plaintiff was not a tenant, (b) that the act could not affect the tenancy in question because it antedated the act, (c) that the act and any regulations made under its authority were unconstitutional, and (d) that Congress could not delegate to the administrator the making of the regulation relied on by the plaintiffs.

On May 17, 1943, Prentiss M. Brown, administrator of the Office of Price Administration, was allowed to intervene as provided in § 205 (d) of the act. On May 3, 1944, Chester Bowles, his successor in that office, was substituted as intervener.

There was evidence to support the allegations of the declaration. The judge did not find the facts, but ruled that the court had no jurisdiction, and ordered the action dismissed. On October 28, 1943, the plaintiffs having claimed a report, the judge made a report to the Appellate Division. On September 12, 1944, the Appellate Division sustained the judge by dismissing the report. Both the plaintiffs and the intervener appealed to this court.

The power of Congress "to declare war," and by plain implication, to wage war, is a power to wage war successfully, with all the means needed for that purpose. *Hirabayashi* v. *United States*, 320 U. S. 81, 93. *Ex parte Quirin,* 317 U. S. 1, 25, 26. See also *Godard* v. *Babson-Dow Manuf. Co.* 313 Mass. 280, 287. Many individual rights that exist

in time of peace may be denied in time of war, not because war suspends the Constitution, for it does not (*Ex parte Milligan*, 4 Wall. 2, 120, 121; *United States* v. *L. Cohen Grocery Co.* 255 U. S. 81, 88; *Home Building & Loan Association* v. *Blaisdell*, 290 U. S. 398, 425, 426; *A. L. A. Schechter Poultry Corp.* v. *United States*, 295 U. S. 495, 528; *Hirabayashi* v. *United States*, 320 U. S. 81, 110), but because the war power given to Congress by the Constitution itself overrides, during the emergency of war, every claim of right that might impede the successful prosecution of the war. *Hamilton* v. *Kentucky Distilleries & Warehouse Co.* 251 U. S. 146. *United States* v. *Bethlehem Steel Corp.* 315 U. S. 289, 305. *Hartzel* v. *United States*, 322 U. S. 680. *Korematsu* v. *United States*, 323 U. S. 214. *Ex parte Endo*, 323 U. S. 283. No one in the present case questions the general proposition, now firmly established by judicial decisions under the very act in question, that the power to wage war includes the power to control prices and rents in order to prevent inflation, profiteering and economic distress during a war. *Highland* v. *Russell Car & Snow Plow Co.* 279 U. S. 253. *Yakus* v. *United States*, 321 U. S. 414. *Bowles* v. *Willingham*, 321 U. S. 503. *Taylor* v. *Brown*, 137 Fed. (2d) 654. Compare, as to price regulation in time of peace, *Olsen* v. *Nebraska*, 313 U. S. 236; *Federal Power Commission* v. *Natural Gas Pipeline Co.* 315 U. S. 575; *West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379.

Even if the rule that the courts of one sovereignty will not enforce penalties imposed by the laws of another applies to penalties imposed by the laws of the United States, the short answer to any objection founded on that rule is that a cause of action given to a person aggrieved to recover damages for the wrong done him is remedial and not penal within that rule even though the damages consist of a multiple of the actual loss or even are assessed without regard to the actual loss.[1] This has been so held with respect to

---

[1] *Huntington* v. *Attrill*, 146 U. S. 657. *Brady* v. *Daly*, 175 U. S. 148. *Chattanooga Foundry & Pipe Works* v. *Atlanta*, 203 U. S. 390. *Atchison, Topeka & Santa Fe Railway* v. *Nichols*, 264 U. S. 348. *Overnight Motor Transportation Co. Inc.* v. *Missel*, 316 U. S. 572, 583, 584. *Palmer* v. *Hoffman*, 318 U. S. 109, 118. *Roberge* v. *Burnham*, 124 Mass. 277, 278, 279. *Calvin* v. *Huntley*,

the remedy given by the act in question to a person over-charged. *Miller* v. *Municipal Court of the City of Los Angeles*, 22 Cal. (2d) 818. *Lapinski* v. *Copacino*, 131 Conn. 119. *Lambros* v. *Brown,* —— Md. ——.[1] *Beasley* v. *Gottlieb*, 131 N. J. L. 117. Compare *Bowles* v. *Farmers National Bank*, 147 Fed. (2d) 425.

The objection that Congress had no power to delegate to the administrator the fixing of maximum limits upon rents has already been decided to be unsound. It is true that neither Congress nor the General Court of this Commonwealth may delegate its legislative function completely. But where the legislative branch of government has determined the policy to be pursued, it has power to delegate to an administrative officer or board the working out of the details by which that policy is applied to the subject matter. *Commonwealth* v. *Hudson*, 315 Mass. 335, 341–343. *Opinion of the Justices*, 315 Mass. 761, 767, 768. *Currin* v. *Wallace*, 306 U. S. 1, 15. *Sunshine Anthracite Coal Co.* v. *Adkins*, 310 U. S. 381, 397, 398. Regulations made under the act in question have already been held constitutionally valid within that rule by the controlling authority of the Supreme Court of the United States. *Yakus* v. *United States*, 321 U. S. 414, 423–427. *Bowles* v. *Willingham*, 321 U. S. 503, 512–516.

Of course an unconstitutional regulation, equally with an unconstitutional statute, must be disregarded by the courts, for the courts are bound to enforce the higher law of the Constitution in case of conflict. *Arizona Grocery Co.* v. *Atchison, Topeka & Santa Fe Railway*, 284 U. S. 370, 388. *Pearson* v. *Walling*, 138 Fed. (2d) 655, 658. And until recently any citizen, confronted in the course of litigation with a statute or regulation that he deems an infringement of some constitutional right of his, has always enjoyed the right to defend against that statute or regulation by point-

---

178 Mass. 29. *Hanlon* v. *Frederick Leyland & Co. Ltd.* 223 Mass. 438. *E. S. Parks Shellac Co.* v. *Harris*, 237 Mass. 312. *Sullivan* v. *Hustis*, 237 Mass. 441. *Somers* v. *Broderick*, 281 Mass. 550. *Jackson* v. *Anthony*, 282 Mass. 540. *Arnold* v. *Jacobs*, 316 Mass. 81, 84. *Bowles* v. *American Stores, Inc.* 139 Fed. (2d) 377.

[1] 41 Atl. (2d) 78. (Official citation not available at time of printing. — REPORTER.)

ing out its conflict with the higher law of the Constitution, and requiring the court to apply that higher law and to disregard the conflicting statute or regulation of inferior rank. That right is inferable from the Constitution itself, which created, not an authoritarian government, but a government of limited powers, which are subject to certain individual rights that even majorities must respect, and that are the essence of liberty.[1]

The basis for the refusal of jurisdiction by the court below was an unusual and ingenious legislative device contained in the emergency price control act of 1942, intended to make difficult any effective attack upon the constitutional validity of any regulation made by the administrator under the authority of that act. In § 204 (d) it was provided that, with the exception of the Emergency Court of Appeals created by the act (§ 204 [c]) and the Supreme Court of the United States on certiorari from that court (§ 204 [d]), "no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation." The words "such regulation" may be restricted to a regulation authorized by the act, and may leave open to any court the question whether a regulation conforms to the act. *Speicher* v. *Sowell*, 309 Mich. 54. *Farmers' Gin Co.* v. *Hayes*, 54 Fed. Sup. 47, 55. *Hurst* v. *Haak*, 28 Ohio Opinions, 196. If that is true, in an action like the present a State court would be at liberty to consider (1) the constitutional validity of the act itself, but not (if the act is constitutional) the constitutional validity of regulations made under its authority, *Yakus* v. *United States*, 321 U. S. 414, 430; *Regan* v. *Kroger Grocery & Baking Co.* 386 Ill. 284; *Ritchie* v. *Johnson*, 158 Kans. 103, (2) the question whether the regulation exceeded the statutory power to regulate, (3) the proper interpretation of the regulations, *Bowles* v. *Simon*, 145 Fed.

---

[1] *Loan Association* v. *Topeka*, 20 Wall. 655, 662, 663. *Marbury* v. *Madison*, 1 Cranch, 137. *Adkins* v. *Children's Hospital*, 261 U. S. 525, 544. *United States* v. *Butler*, 297 U. S. 1, 62, 63. *Carter* v. *Carter Coal Co.* 298 U. S. 238, 296, 297. *West Virginia State Board of Education* v. *Barnette*, 319 U. S. 624. *Horton* v. *Attorney General*, 269 Mass. 503, 507, 508. Cardozo, The Nature of the Judicial Process (1921) 92, 93. Wilson, Constitutional Government in the United States (1911) 16. 1 Bryce, American Commonwealth (1910 ed.) 242–261.

(2d) 334; *Bowles* v. *Seminole Rock & Sand Co.* 325 U. S. 410, and (4) the question whether the regulation was disobeyed. Plainly, Congress had power so to restrict the jurisdiction of State courts to enforce a Federal statute. *Bowles* v. *Willingham,* 321 U. S. 503, 511, 512. Equally plainly, Congress intended to vest in State courts such a restricted jurisdiction in cases like the present case. § 205 (c).

The question, thus split off, of the constitutional validity of a regulation, was entrusted solely to the newly created Emergency Court of Appeals, under a procedure calculated to discourage attacks on constitutional grounds. By § 203 (a) any person "subject to any provision of such regulation" was required, in order to save any constitutional objection, to file a protest with the administrator, usually within sixty days after the regulation was issued, "specifically setting forth objections to any such provision and affidavits or other written evidence in support of such objections." Whether one not presently affected by a regulation, but potentially affected if he should become a landlord, had to protest within sixty days after the regulation was issued, was not decided in *Buka Coal Co.* v. *Brown,* 133 Fed. (2d) 949. See also *Gale Realty Corp.* v. *Bowles,* 139 Fed. (2d) 496; *Rabkin* v. *Bowles,* 143 Fed. (2d) 600. Since the jurisdiction of the Emergency Court of Appeals attached only after the denial by the administrator of a protest, and a late protest was permitted only when "based solely on grounds arising after the expiration of such sixty days" (§ 203 [a]), a person not a landlord within the sixty day period could never attack the constitutional validity of a regulation unless his protest after he became a landlord could be said to be based "solely" on "grounds arising after the expiration of such sixty days," and not merely occasioned by something happening after such expiration. See *R. E. Schanzer, Inc.* v. *Bowles,* 141 Fed. (2d) 262. At any rate, the time limit for protest must have foreclosed the rights of many persons who never had heard of any regulation before the time limit expired. Besides, it is

not clear that a person failing seasonably to protest could avail himself of a later decision in favor of another protestant that the regulation was invalid, because the former could never protest after the sixty days expired unless his protest was based "solely" on "grounds arising after the expiration of such sixty days," and not merely occasioned by a subsequent happening. If, notwithstanding a decision in favor of another protestant, the administrator or some private person should nevertheless pursue him, what court could give him relief? Could it be the Emergency Court of Appeals, the jurisdiction of which had to be based upon a timely protest? Or an ordinary court, from which all right to consider the constitutional validity of a regulation was withheld? These questions never received a judicial answer.

The legislative plan plainly was intended to put in default the great mass of persons who might eventually come into conflict with any regulation made by the administrator, and to foreclose their right to object to it on constitutional grounds. That plan was highly successful. Only the most vigilant could preserve their right to be heard. Others had to obey, or pay the penalty, no matter how outrageously the regulation might violate their constitutional rights.

In *Yakus* v. *United States*, 321 U. S. 414, affirming *Rottenberg* v. *United States*, 137 Fed. (2d) 850, the procedure already described was held to amount to due process under the Fifth Amendment to the Constitution of the United States. Three justices dissented. The opinion of the majority does not make perfectly clear whether the court thought that the requisites of due process are less in time of war than in time of peace. Mr. Justice Rutledge dissenting (page 468) thought the question "not solely one of individual right or due process of law," but "equally one of the separation and independence of the powers of government and of the constitutional integrity of the judicial process." This case was followed in *Bowles* v. *Willingham*, 321 U. S. 503. It is obvious that the legislative device held valid in these cases, if imitated and sustained with respect

to constitutional rights generally, would have appalling consequences. [1]

The court below held that it was not required to accept and exercise such a truncated, piecemeal and incomplete jurisdiction as that accorded it by the emergency price control act. The question before us is whether that ruling was correct.

We assume that a State is not required to give jurisdiction to any of its courts to enforce a Federal statute. *Stephens, petitioner,* 4 Gray, 559. *County of Hampden* v. *Morris,* 207 Mass. 167, 169. *Keegan* v. *Director General of Railroads,* 243 Mass. 96, 99. But no doubt exists that the Municipal Court of the City of Boston, a court of record of superior and general jurisdiction covering all actions of contract or tort (G. L. [Ter. Ed.] c. 218, § 4), already had jurisdiction to entertain actions of the class to which the present action belongs. We are very far from intimating that a legislative device like that embodied in the emergency price control act of 1942, even as now amended, would afford due process under arts. 1, 10 and 12 of the Declaration of Rights of our Constitution, which in content are comparable [2] to the Fifth and Fourteenth Amendments to the Federal Constitution, or would afford the judicial review of constitutional questions that is implicit in our Constitution. See *Ohio* v. *Akron*

---

[1] When Congress enacted the amendments to the emergency price control act of 1942 made by the stabilization extension act of 1944 (Act of June 30, 1944, c. 325), it had become convinced that the legislative device contained in the earlier act was too harsh and had worked all too effectively. *United States* v. *Center Veal & Beef Co.* 61 Fed. Sup. 65. In many respects the harshness of the earlier statute was mitigated by the amendments, without, however, affecting the division of jurisdiction among courts provided for by the earlier act. Since even the harsher provisions of the earlier act have been held constitutionally valid by the controlling authority of the Supreme Court of the United States, the present case is not one where pending the suit a ruling correct when made has been invalidated for the future by subsequent change in the law. *Mulligan* v. *Hilton,* 305 Mass. 5, 9. *Carpenter* v. *Wabash Railway,* 309 U. S. 23. *Vandenbark* v. *Owens-Illinois Glass Co.* 311 U. S. 538. *Hines* v. *Davidowitz,* 312 U. S. 52. Compare *Diggins* v. *Theroux,* 314 Mass. 735, 738.

[2] *Denny* v. *Mattoon,* 2 Allen, 361, 381, 382. *Opinion of the Justices,* 267 Mass. 607, 610. *Attorney General* v. *Brissenden,* 271 Mass. 172, 184. *Opinion of the Justices,* 271 Mass. 598, 601. *Ahmed's Case,* 278 Mass. 180, 186. *Universal Adjustment Corp.* v. *Midland Bank, Ltd.* 281 Mass. 303, 320. *Campbell* v. *Boston,* 290 Mass. 427, 430. *McMurdo* v. *Getter,* 298 Mass. 363, 365. *Mulligan* v. *Hilton,* 305 Mass. 5, 9. *Commonwealth* v. *Ferris,* 305 Mass. 233, 234. *Bernhardt* v. *Atlantic Finance Corp.* 311 Mass. 183, 189, 190.

*Metropolitan Park District*, 281 U. S. 74, 66 Am. L. R. 1460; *People* v. *Western Union Telegraph Co.* 70 Colo. 90, 15 Am. L. R. 326. Whether it would or not seems to us immaterial. Congress, acting within the Federal Constitution, may create rights and remedies even though they conflict with the Constitution of a State. An act of Congress and administrative regulations made under its authority and consequently made substantially a part of the act (*Maryland Casualty Co.* v. *United States*, 251 U. S. 342, 349; *Manhattan General Equipment Co.* v. *Commissioner of Internal Revenue*, 297 U. S. 129, 134; *Atchison, Topeka & Santa Fe Railway* v. *Scarlett*, 300 U. S. 471, 474; *Yakus* v. *United States*, 321 U. S. 414, 435; *Pearson* v. *Walling*, 138 Fed. [2d] 655, 658) become part of the "supreme law of the land," under art. 6 of the Constitution of the United States, which provides that "the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding." *Florida* v. *Mellon*, 273 U. S. 12, 17. *New York* v. *Maclay*, 288 U. S. 290, 292. *Oklahoma* v. *Guy F. Atkinson Co.* 313 U. S. 508, 534, 535.

However abhorrent to the Constitution of Massachusetts such a legislative device as that contained in the emergency price control act may be, nothing in our Constitution can be said to withdraw a case arising under that act from the jurisdiction granted to the Municipal Court of the City of Boston in general terms covering an action like the present. Where Congress has given to State courts jurisdiction of such sort as Congress has seen fit to give, to enforce an act of Congress, and those courts under State law have jurisdiction that enables them to enforce it, they are not at liberty, at least in civil proceedings, to decline to exercise that jurisdiction on the ground that the act of Congress is contrary to the public policy of the State or contravenes its Constitution or laws. Within its field, Congress speaks for the whole nation and establishes a policy for every State that supersedes any local policy to the contrary. We think that the court below was required to take jurisdiction of the present case. *Second Employers' Liability Cases*, 223 U. S. 1, 55, et seq. *Gauthier* v. *Morrison*, 232 U. S. 452,

462. *Minneapolis & St. Louis Railroad* v. *Bombolis*, 241 U. S. 211, 222, 223. *McKnett* v. *St. Louis & San Francisco Railway*, 292 U. S. 230. *Miles* v. *Illinois Central Railroad*, 315 U. S. 698, 703, 704. *Ward* v. *Jenkins*, 10 Met. 583, 589. See also *Goulis* v. *Judge of Third District Court of Eastern Middlesex*, 246 Mass. 1; *Canada Malting Co. Ltd.* v. *Paterson Steamships, Ltd.* 285 U. S. 413, 419.

Our conclusion, that the court below should have taken jurisdiction, is supported by decisions of the highest courts in other States. *Kittrell* v. *Hatter*, 243 Ala. 472. *Miller* v. *Municipal Court of the City of Los Angeles*, 22 Cal. (2d) 818. *Lapinski* v. *Copacino*, 131 Conn. 119. *Regan* v. *Kroger Grocery & Baking Co.* 386 Ill. 284. *Ritchie* v. *Johnson*, 158 Kans. 103. *Morrison* v. *Hutchins*, 158 Kans. 123. *Lambros* v. *Brown*, —— Md. ——. *Desper* v. *Warner Holding Co.* 219 Minn. 607. *Beasley* v. *Gottlieb*, 131 N. J. L. 117.

One question of practice remains. The present intervener became a party by intervention while the case was pending before the Appellate Division, which made its decision on September 12, 1944. Both the plaintiffs and the intervener duly appealed to this court under G. L. (Ter. Ed.) c. 231, § 109. Within the prescribed ten days both the plaintiffs and the intervener gave an order in writing as required by G. L. (Ter. Ed.) c. 231, § 135, as amended by St. 1941, c. 187, § 1, for the preparation of papers for transmission to this court. The clerk notified them that the estimated expense would be $50. Within the time allowed by the statute last cited the intervener, with the concurrence of the plaintiffs, paid the $50. The plaintiffs paid nothing. The same record would serve for both appeals. *Barrell* v. *Globe Newspaper Co.* 268 Mass. 99. We think it unimportant which appellant paid, or whose money was paid. The Appellate Division had power to put the cost even upon a party not an appellant. § 135, *supra*. In our opinion both appeals are properly here.

*Motion to dismiss plaintiffs' appeal denied.*
*Order of Appellate Division dismissing report reversed.*
*Order dismissing action set aside.*
*Case to stand for trial.*